COMMUNITY NATIONAL BANK, Plaintiff-Respondent,

v.

MEDICAL BENEFIT ADMINISTRATORS, LLC, Defendant-Appellant,

PAS, INC., Intervening Defendant-Respondent.

Court of Appeals

No. 99–3026. *Submitted on briefs December 7, 2000.—Decided March 1, 2001.*

## 2001 WI App 98

(Also reported in 626 N.W.2d 340.)

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Kristine A. Edwards* and *Daniel J. Schlichting* of *Hurley, Burish & Milliken, S. C.* of Madison.

On behalf of the intervening defendant-respondent, the cause was submitted on the brief of *Kevin J. Palmersheim* of *Haley Palmersheim, S.C.* of Madison.

Before Dykman, P.J., Vergeront and Roggensack, JJ.

¶ 1. ROGGENSACK, J. Medical Benefit Administrators, LLC (MBA) appeals an order of the circuit court approving the final accounting of its court-appointed receiver. MBA claims that the circuit court erred because the purchaser of MBA's assets awarded the receiver a $400,000 consulting contract as part of MBA's asset sale. We conclude that the receiver had a fiduciary duty to MBA and its creditors not to deal with receivership property to benefit itself at their expense and that the consulting contract constituted a corporate opportunity belonging to MBA, which the receiver appropriated to itself. As a result, we conclude that the circuit court erroneously exercised its discretion in approving the receiver's final accounting, and we reverse that determination. We also remand with directions to determine the appropriate compensation the receiver is to pay to the receivership estate as a result of its breach of fiduciary duty.

## BACKGROUND

¶ 2.   In 1993, a subsidiary of MBA, Jack Jurewicz Enterprises, Inc., purchased a third-party health benefit plan administration business from PAS, Inc. PAS retained a security interest in the stock of Jack Jurewicz Enterprises and MBA for the purchase price of the business. Jurewicz, who was the president and principal owner of MBA, also personally guaranteed MBA's obligation to PAS. PAS remained in existence as a shell corporation to distribute MBA's payments to its shareholders.

¶ 3.   In November 1998, Community National Bank ("the bank"), a secured creditor, initiated a collection action against MBA and moved for the appointment of a receiver on grounds that MBA was insolvent.[1] Jurewicz sold part of the third-party administration business in January. He attempted to negotiate the sale of the balance of MBA's business to Alliance Benefit Group Medical Services, LLC on terms that included a $300,000 consulting agreement between Alliance and MBA for his services after the purchase. Meanwhile, the circuit court permitted PAS to intervene in the action as a co-defendant. Before Jurewicz could complete the sale, PAS exercised its pledge rights in MBA stock and asserted control over the stock and the operation of MBA.

¶ 4.   At this point, the bank renewed its request that a receiver be appointed for MBA, and the circuit court appointed PAS. PAS then negotiated the sale of MBA's remaining assets to Alliance. Under the asset purchase agreement, Alliance agreed to pay $2.4 million for MBA's business, the same amount it had

---

[1] The complaint alleged MBA was insolvent. No answer was filed to contest that allegation.

offered Jurewicz. However, Alliance also agreed to pay $300,000 to PAS over four years in exchange for consulting services and an agreement not to compete.[2] MBA objected to the terms of the sale, arguing that Jurewicz and MBA should be hired as the consultant and that doing otherwise would leave Jurewicz personally liable for the debt owed to PAS, and would leave several creditors of MBA, including MBA's attorneys, its accountants, and Jurewicz himself, unpaid. Nevertheless, the circuit court approved the sale and the consulting agreement and subsequently approved PAS's actions as receiver and its final accounting. MBA appeals.

## DISCUSSION

**Standard of Review.**

¶ 5.    The approval of a receiver's actions and final accounting is reviewed as a discretionary decision. *Speiser v. Merchants' Exch. Bank*, 110 Wis. 506, 518, 86 N.W. 243, 247 (1901). We will uphold a circuit court's discretionary decision if it examined the relevant facts of record, applied the correct legal standard to them, and reached a conclusion that a reasonable judge could reach. *State v. Edmunds*, 229 Wis. 2d 67, 74, 598 N.W.2d 290, 294 (Ct. App. 1999).

¶ 6.    Whether a corporate opportunity exists is a question of fact. *Racine v. Weisflog*, 165 Wis. 2d 184, 194, 477 N.W.2d 326, 331 (Ct. App. 1991). We will uphold the trial court's findings of fact unless they are

---

[2] The terms of the agreement were subsequently revised to a $400,000 payment over five years.

clearly erroneous. WIS. STAT. § 805.17(2) (1999–2000);[3] *Noll v. Dimiceli's, Inc.*, 115 Wis. 2d 641, 643, 340 N.W.2d 575, 577 (Ct. App. 1983). However, when the facts and their reasonable inferences will permit only one determination, we are presented with a question of law, which we review *de novo. Vocational, Technical & Adult Educ., Dist. 13 v. DILHR*, 76 Wis. 2d 230, 240, 251 N.W.2d 41, 46 (1977).

**Breach of Fiduciary Duty.**

¶ 7.  A circuit court may appoint a receiver when a corporation is insolvent or in imminent danger of insolvency. WISCONSIN STAT. § 813.16(4).[4] "A receiver is . . . appointed by a court to take into [its] custody, control, and management the property or funds of another pending judicial action concerning them." 75 C.J.S. *Receivers* § 1 (1952). A receiver is a fiduciary to all who come within the scope of its receivership. *See McGivern v. Amasa Lumber Co.*, 77 Wis. 2d 241, 253, 252 N.W.2d 371, 376 (1977); *Candee v. Egan*, 84 Wis. 2d 348, 362, 267 N.W.2d 890, 897 (1978); *In re Portex Oil Co.*, 43 F. Supp. 859, 860 (D. Ore. 1942); WIS. STAT. § 112.01(1)(b).

¶ 8.  While no Wisconsin precedent has directly addressed the scope of a receiver's duty of loyalty to an insolvent corporation, other jurisdictions have con-

---

[3] All citations to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

[4] WISCONSIN STAT. § 813.16. **Receivers.** A receiver may be appointed:

. . .

(4)   When a corporation has been dissolved or is insolvent or in imminent danger of insolvency, or has forfeited its corporate rights.

cluded that a receiver has a fiduciary duty to all parties with an interest in the receivership estate, including the insolvent debtor and all its creditors. *Phelan v. Middle States Oil Corp.*, 154 F.2d 978, 991 (2d Cir. 1946); *Martin v. Luster*, 85 F.2d 833, 843 (7th Cir. 1936); *Security Pac. Nat'l. Bank v. Geernaert*, 245 Cal. Rptr. 712, 716 (Ct. App. 1988). The United States Supreme Court has opined that a receiver may not place itself in a position where its personal interests may be antagonistic to those of the estate it is administering. *Jackson v. Smith*, 254 U.S. 586, 588 (1921). It may not deal with receivership property to benefit itself at the expense of the estate, *Crites, Inc. v. Prudential Ins. Co. of America*, 322 U.S. 408, 414 (1944), and it may not profit from its receivership except through compensation approved by the court.[5] *Ravlin v. Chicago, Aurora & DeKalb R.R. Co.*, 129 N.E. 730, 736 (Ill. 1921); *Adair County v. Ownby*, 75 Mo. 282 (1882). If a receiver breaches its fiduciary duty by profiting from the receivership at the expense of the receivership estate, the court must compel it to disgorge its profits and apply them to the receivership estate. *Crites*, 322 U.S. at 414. Those views are consistent with the duty of loyalty imposed on other fiduciaries under Wisconsin law, and we adopt them.

---

[5] PAS argues that the $400,000 consulting contract could be viewed as compensation for its services as a receiver. However, generally a receiver may not be compensated for its services when it also is a party to the underlying action. *Bartelt v. Smith*, 145 Wis. 31, 36, 129 N.W. 782, 784 (1911). Additionally, the $400,000 was to be paid for consulting services that were to be provided over the next five years, not for services it had already provided as a receiver.

¶ 9.   MBA claims that PAS's taking the $400,000 consulting contract for itself rather than arranging for it to be performed by Jurewicz for the benefit of MBA and its creditors contravened the corporate opportunity doctrine and therefore violated PAS's fiduciary duty as MBA's receiver. The doctrine of corporate opportunity provides that one who is in a fiduciary relationship to a corporation "may not acquire, in opposition to the corporation, property in which the corporation has an interest or tangible expectancy or which is essential to its existence." *Gauger v. Hintz,* 262 Wis. 333, 351, 55 N.W.2d 426, 435–36 (1952) (corporate officers and directors, as fiduciaries of the corporation, held bound by the corporate opportunity doctrine) (citation omitted). For corporate officers, this restriction arises from the fiduciary duty of undivided loyalty to the corporation. *Id.* Because a receiver also has a duty of undivided loyalty to the insolvent corporation and its creditors, *Phelan,* 154 F.2d at 991, we conclude that it, too, is bound by the doctrine of corporate opportunity.

¶ 10.   To examine MBA's contention, the factfinder first must consider whether a corporate opportunity existed for the principal,[6] here MBA. *Racine,* 165 Wis. 2d at 193–95, 477 N.W.2d at 331. In this inquiry, the facts and circumstances are examined in light of whether the principal had an interest or expectancy in the business opportunity and the ability to take advantage of it. *Id.* at 194, 477 N.W.2d at 331. If it did, the factfinder then determines whether any equitable factors existed that show that the receiver

---

[6] A principal is one to whom a fiduciary owes a fiduciary obligation. WISCONSIN STAT. § 112.01(1)(e).

acted in conformity with its fiduciary duties when it took the opportunity for itself. *Id.* at 195–96, 477 N.W.2d at 331–32.

¶ 11. MBA argues that the circuit court erroneously exercised its discretion in approving PAS's accounting because it failed to consider (1) whether PAS, as the receiver, was under a fiduciary duty to MBA and its creditors; and (2) whether the consulting contract was a corporate opportunity belonging to MBA. We agree. As the court-appointed receiver in a collection action against an insolvent corporation, PAS owed a fiduciary duty to MBA and to its unpaid creditors.[7] As a result of this duty, PAS could not place itself in a position antagonistic to MBA or its unpaid creditors, and it could not deal with receivership property to benefit itself at the expense of those to whom it owed a fiduciary duty.

¶ 12. Accordingly, we conclude that the circuit court erred in failing to consider whether the consulting contract constituted receivership property because it was a corporate opportunity that belonged to MBA. Generally, these determinations are factual determinations to be made by the circuit court. *Racine*, 165 Wis. 2d at 194, 477 N.W.2d at 331. However, here the uncontroverted facts of record show MBA had both the opportunity to acquire the contract and the ability to perform it. Through affidavits uncontested by PAS, MBA demonstrated that: (1) it had identified the

---

[7] Under Wisconsin law, a creditor may not be appointed as a receiver of an insolvent corporation unless both parties consent or unless other special circumstances are present. *Bartelt*, 145 Wis. at 36, 129 N.W. at 784. Because MBA did not object when the circuit court appointed PAS as the receiver, we do not consider the issue on appeal.

opportunity of the consulting contract and was negotiating to obtain it before the receiver was appointed; (2) MBA had the fundamental knowledge, experience, and personnel necessary to perform the consulting contract because it would have been advising on the operation of a business it had operated since 1993; (3) Jurewicz, who would have provided the consulting services, had operated the third-party claims business as MBA's president since 1993; (4) securing the consulting contract was essential to MBA's plan to pay off its secured creditors; and (5) MBA, despite its insolvency, could have performed the contract through Jurewicz, its employee. Given these undisputed facts, we conclude, as a matter of law, that the consulting contract was a corporate opportunity belonging to MBA.

¶ 13.   Next, we consider whether any equitable factors existed to show that PAS acted in conformance with its fiduciary duties towards MBA and its unpaid creditors despite the existence of a corporate opportunity belonging to MBA. Through the enforcement of its rights as a secured creditor of MBA, PAS exercised control of MBA. PAS knew when it was appointed receiver that Jurewicz had been negotiating the sale of MBA to Alliance and that a consulting agreement between MBA and Alliance was a part of that negotiation. PAS told the court that it was negotiating with a different prospective purchaser. However, shortly after being appointed receiver, it sold MBA's business to Alliance at the identical purchase price MBA had negotiated; however, the asset purchase agreement named PAS as the consultant instead of MBA. As a result, the unpaid creditors of MBA had no access to the proceeds of the $400,000 consulting contract, and Jurewicz remained liable to PAS for money owed by MBA

because he had personally guaranteed the loan. PAS has identified no equitable factors in its conduct to show that it acted in conformance with its fiduciary duties toward MBA[8] and its unpaid creditors. Therefore we conclude that PAS wrongfully took a corporate opportunity belonging to MBA, to which it owed a fiduciary duty. By so doing, it placed itself in a position antagonistic to MBA and its creditors and breached its fiduciary duty to them.

¶ 14.   We turn now to the remedy for PAS's breach of fiduciary duty. Because the circuit court erroneously exercised its discretion in approving PAS's final accounting, which included the $400,000 consulting contract,[9] we reverse that approval and the resulting discharge of PAS.[10] The record does not reflect what Alliance has paid PAS on the consulting contract or what PAS's profit was or what would have been MBA's profit had it been permitted to perform the contract. When a receiver breaches its fiduciary duty to those to whom it owes such a duty, it must disgorge the profits resulting from the breach of duty. *Crites*, 322 U.S. at 414. One method of accomplishing this is for the circuit court to order the receiver to turn over all profits received as a result of the breach and apply them to the receivership estate. That is a remedy that could be employed here; however, we do not preclude other

---

[8] In its brief, PAS states it "did not have a fiduciary duty directly to MBA, but only indirectly as an appointee of the court." We are unsure of the distinction PAS is trying to establish, and it cites no authority for its statement.

[9] The record on appeal does not contain a copy of the consulting contract between PAS and Alliance.

[10] We do not disturb the sale to Alliance, which is not a party to this action.

methods that the circuit court may conclude are appropriate.[11] Therefore, we remand this matter to the circuit court to determine PAS's profit derived from its breach of fiduciary duty as MBA's receiver, MBA's expected profit from the consulting agreement and the appropriate payment for PAS to make, either directly or indirectly, to the receivership estate.

## CONCLUSION

¶ 15.   We conclude that PAS, as the receiver for MBA, had a fiduciary duty to MBA and its creditors not to deal with receivership property to benefit itself at the expense of MBA. We also conclude that the consulting contract was a corporate opportunity belonging to MBA that the circuit court did not acknowledge. Accordingly, we conclude the circuit court erroneously exercised its discretion in approving the receiver's final accounting, and we reverse that determination. We also remand with directions to determine the appropriate compensation PAS is to pay to the receivership estate because of its breach of fiduciary duty.

*By the Court.*—Order reversed and cause remanded with directions.

---

[11] For example, our directions on remand do not preclude PAS from assigning the consulting contract to MBA or from subcontracting the provision of services under that contract to MBA, if the contract so allows or can be amended with the agreement of Alliance to so allow.