COURT OF APPEALS
DECISION
DATED AND FILED

July 30, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos.    **2019AP1728**
**2019AP2063**

Cir. Ct. No.  2017CV1133

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT II**

NO. 2019AP1728

IN RE:

THE ATRIUM OF RACINE, INC., D/B/A THE ATRIUM AND BAY POINTE:

MARILYN CASANOVA, MEMBER OF CREDITOR COMMITTEE, AUDREY J. FOX, MEMBER OF CREDITOR COMMITTEE, DR. MELVIN MIRITZ, MEMBER OF CREDITOR COMMITTEE, LINDA MIRITZ, MEMBER OF CREDITOR COMMITTEE, EDWARD AND LOUISE LANGLEIB TRUST, MEMBER OF CREDITOR COMMITTEE, CARLETON MUSSON, MEMBER OF CREDITOR COMMITTEE, WILMA MILOVANCEVIC, MEMBER OF CREDITOR COMMITTEE, HELEN TAYLOR, MEMBER OF CREDITOR COMMITTEE, LOUIS P. TEICHERET TRUST, MEMBER OF CREDITOR COMMITTEE, REVEREND FREDERICK MARKS, MEMBER OF CREDITOR COMMITTEE, JEWEL MARKS, MEMBER OF CREDITOR COMMITTEE, PATRICIA MEIER, MEMBER OF CREDITOR COMMITTEE, PATRICIA TEERNSTRA, MEMBER OF CREDITOR COMMITTEE, ANDREW MIKAELIAN, MEMBER OF CREDITOR COMMITTEE, MARCELLA MIKAELIAN, MEMBER OF CREDITOR COMMITTEE, JOSEPHINE BROOKS, MEMBER OF CREDITOR COMMITTEE, EVELYN ODELL, MEMBER OF

CREDITOR COMMITTEE, LAURENCE FREER, MEMBER OF
CREDITOR COMMITTEE, DOROTHY KOHL, MEMBER OF
CREDITOR COMMITTEE, KAREN BOERGER, MEMBER OF
CREDITOR COMMITTEE, JACQUELINE WILLIAMSON, MEMBER
OF CREDITOR COMMITTEE, JUDY GLOWINSKI, MEMBER OF
CREDITOR COMMITTEE, ANNE TREDWELL, MEMBER OF
CREDITOR COMMITTEE, MARILYN BAHAM, MEMBER OF
CREDITOR COMMITTEE, ELSIE GOTZMAN, MEMBER OF
CREDITOR COMMITTEE, LUCILLE CIARAMITA, MEMBER OF
CREDITOR COMMITTEE, JOANNE RAMAKER, MEMBER OF
CREDITOR COMMITTEE, JOHANNA SANDER, MEMBER OF
CREDITOR COMMITTEE, THOMAS ESER, MEMBER OF
CREDITOR COMMITTEE, HENRYETTA ESER, MEMBER OF
CREDITOR COMMITTEE, GRACE NELSON, MEMBER OF
CREDITOR COMMITTEE, JANE ODDERS, MEMBER OF
CREDITOR COMMITTEE, DAVID NELSON, MEMBER OF
CREDITOR COMMITTEE, RAY KATT (DECEASED), MEMBER OF
CREDITOR COMMITTEE, LOUISE KATT, MEMBER OF CREDITOR
COMMITTEE, ETHEL HADER, MEMBER OF CREDITOR
COMMITTEE, WARREN LARSEN, MEMBER OF CREDITOR
COMMITTEE, ELLEN LARSEN, MEMBER OF CREDITOR
COMMITTEE, FRANCES SCOTT, MEMBER OF CREDITOR
COMMITTEE, SUSAN PROUTY, MEMBER OF CREDITOR
COMMITTEE, ROBERT RAINEY, MEMBER OF CREDITOR
COMMITTEE, PATRICIA RAINEY, MEMBER OF CREDITOR
COMMITTEE, HELEN ECKHEART, MEMBER OF CREDITOR
COMMITTEE, WILMA WISER, MEMBER OF CREDITOR
COMMITTEE, EARL CHRISTIANSON, MEMBER OF CREDITOR
COMMITTEE AND MARIAN BLOCH, MEMBER OF CREDITOR
COMMITTEE,

   APPELLANTS,

 V.

MICHAEL S. POLSKY, ESQ., RECEIVER AND THE BANK OF NEW
YORK MELLON TRUST COMPANY, N.A.,

   RESPONDENTS.

**NO. 2019AP2063**

---

**IN RE:**

**THE ATRIUM OF RACINE, INC., D/B/A THE ATRIUM AND BAY POINTE:**

**MARILYN CASANOVA, MEMBER OF CREDITOR COMMITTEE, AUDREY J. FOX, MEMBER OF CREDITOR COMMITTEE, DR. MELVIN MIRITZ, MEMBER OF CREDITOR COMMITTEE, LINDA MIRITZ, MEMBER OF CREDITOR COMMITTEE, EDWARD AND LOUISE LANGLEIB TRUST, MEMBER OF CREDITOR COMMITTEE, CARLETON MUSSON, MEMBER OF CREDITOR COMMITTEE, WILMA MILOVANCEVIC, MEMBER OF CREDITOR COMMITTEE, HELEN TAYLOR, MEMBER OF CREDITOR COMMITTEE, LOUIS P. TEICHERT TRUST, MEMBER OF CREDITOR COMMITTEE, REVEREND FREDERICK MARKS, MEMBER OF CREDITOR COMMITTEE, JEWEL MARKS, MEMBER OF CREDITOR COMMITTEE, PATRICIA MEIER, MEMBER OF CREDITOR COMMITTEE, PATRICIA TEERNSTRA, MEMBER OF CREDITOR COMMITTEE, ANDREW MIKAELIAN, MEMBER OF CREDITOR COMMITTEE, MARCELLA MIKAELIAN, MEMBER OF CREDITOR COMMITTEE, JOSEPHINE BROOKS, MEMBER OF CREDITOR COMMITTEE, EVELYN ODELL, MEMBER OF CREDITOR COMMITTEE, LAURENCE FREER, MEMBER OF CREDITOR COMMITTEE, DOROTHY KOHL, MEMBER OF CREDITOR COMMITTEE, KAREN BOERGER, MEMBER OF CREDITOR COMMITTEE, JACQUELINE WILLIAMSON, MEMBER OF CREDITOR COMMITTEE, JUDY GLOWINSKI, MEMBER OF CREDITOR COMMITTEE, ANNE TREDWELL, MEMBER OF CREDITOR COMMITTEE, MARILYN BAHAM, MEMBER OF CREDITOR COMMITTEE, ELSIE GOTZMAN, MEMBER OF CREDITOR COMMITTEE, LUCILLE CIARAMITA, MEMBER OF CREDITOR COMMITTEE, JOANNE RAMAKER, MEMBER OF CREDITOR COMMITTEE, JOHANNA SANDER, MEMBER OF CREDITOR COMMITTEE, THOMAS ESER, MEMBER OF CREDITOR COMMITTEE, HENRYETTA ESER, MEMBER OF CREDITOR COMMITTEE, GRACE NELSON, MEMBER OF CREDITOR COMMITTEE, JANE ODDERS, MEMBER OF CREDITOR COMMITTEE, DAVID NELSON, MEMBER OF CREDITOR COMMITTEE, RAY KATT (DECEASED), MEMBER OF**

3

CREDITOR COMMITTEE, LOUISE KATT, MEMBER OF CREDITOR
COMMITTEE, ETHEL HADER, MEMBER OF CREDITOR
COMMITTEE, WARREN LARSEN, MEMBER OF CREDITOR
COMMITTEE, ELLEN LARSEN, MEMBER OF CREDITOR
COMMITTEE, FRANCES SCOTT, MEMBER OF CREDITOR
COMMITTEE, SUSAN PROUTY, MEMBER OF CREDITOR
COMMITTEE, ROBERT RAINEY, MEMBER OF CREDITOR
COMMITTEE, PATRICIA RAINEY, MEMBER OF CREDITOR
COMMITTEE, HELEN ECKHEART, MEMBER OF CREDITOR
COMMITTEE, WILMA WISER, MEMBER OF CREDITOR
COMMITTEE, EARL CHRISTIANSON, MEMBER OF CREDITOR
COMMITTEE, MARIAN BLOCH, MEMBER OF CREDITOR
COMMITTEE, JAN TEICHERT, MEMBER OF CREDITOR
COMMITTEE, DOROTHY NELSON, MEMBER OF CREDITOR
COMMITTEE, METTA REIKER, MEMBER OF CREDITOR
COMMITTEE, PRUDENCE WHITE, MEMBER OF CREDITOR
COMMITTEE, ELAINE OETLINGER, MEMBER OF CREDITOR
COMMITTEE, ESTHER WULFF, MEMBER OF CREDITOR
COMMITTEE, HELEN VEENSTRA, MEMBER OF CREDITOR
COMMITTEE, REV. DR. ROSS HENRY LARSON, MEMBER OF
CREDITOR COMMITTEE, FRED HOFER, MEMBER OF CREDITOR
COMMITTEE, NANCY HOFER, MEMBER OF CREDITOR
COMMITTEE, WINIFRED WISER, MEMBER OF CREDITOR
COMMITTEE, NAZALY BAGDASIAN, MEMBER OF CREDITOR
COMMITTEE, ROBERT CALLAWAY, MEMBER OF CREDITOR
COMMITTEE, ESTATE OF ELAINE ZLEVOR, MEMBER OF
CREDITOR COMMITTEE, MARSHALL CUSHMAN, MEMBER OF
CREDITOR COMMITTEE, VAR KRIKORIAN, MEMBER OF
CREDITOR COMMITTEE, RUTH MINTON, MEMBER OF
CREDITOR COMMITTEE, RICHARD MINTON, MEMBER OF
CREDITOR COMMITTEE, WALTER STEIDL, MEMBER OF
CREDITOR COMMITTEE, IRENE MILLER, MEMBER OF
CREDITOR COMMITTEE, MARIAN KORNWOLF, MEMBER OF
CREDITOR COMMITTEE, MARJORIE SPECKHARD, MEMBER OF
CREDITOR COMMITTEE, DELORES TORPHY, MEMBER OF
CREDITOR COMMITTEE, GERALDINE BAUMBLATT, MEMBER
OF CREDITOR COMMITTEE, JOAN PETERSON, MEMBER OF
CREDITOR COMMITTEE, JOHN ROWLAND, MEMBER OF
CREDITOR COMMITTEE, JULIANNE ROWLAND, MEMBER OF
CREDITOR COMMITTEE, LORRAINE PAVELCIK, MEMBER OF
CREDITOR COMMITTEE, MARILYN ISELIN, MEMBER OF
CREDITOR COMMITTEE, BERNARD BRAUN, MEMBER OF

CREDITOR COMMITTEE, PATRICIA BRAUN, MEMBER OF
CREDITOR COMMITTEE, BOB OTTUM, MEMBER OF CREDITOR
COMMITTEE, HOLLY OTTUM, MEMBER OF CREDITOR
COMMITTEE, JOYCE OTTUM, MEMBER OF CREDITOR
COMMITTEE, JEANNE HAAS, MEMBER OF CREDITOR
COMMITTEE, GLORIA MURPHY, MEMBER OF CREDITOR
COMMITTEE, RALPH ANDERSON, MEMBER OF CREDITOR
COMMITTEE, DORIS BEUTTLER, MEMBER OF CREDITOR
COMMITTEE, GENEVIEVE HOSTAK, MEMBER OF CREDITOR
COMMITTEE, MARLENE WEICHMANN, MEMBER OF CREDITOR
COMMITTEE, MARY MUELLER, MEMBER OF CREDITOR
COMMITTEE, WOOD FAMILY TRUST, MEMBER OF CREDITOR
COMMITTEE AND MARY HOLTZ, MEMBER OF CREDITOR
COMMITTEE,

    APPELLANTS,

  V.

MICHAEL S. POLSKY, ESQ., RECEIVER AND THE BANK OF NEW
YORK MELLON TRUST COMPANY, N.A.,

    RESPONDENTS.

---

APPEALS from orders of the circuit court for Racine County: MICHAEL J. PIONTEK and DAVID W. PAULSON, Judges. *Reversed and cause remanded.*

Before Reilly, P.J., Gundrum and Davis, JJ.

¶1 REILLY, P.J. This consolidated appeal pits one group of creditors against another group of creditors. When the Atrium, a seventy-six-unit senior housing facility, went into receivership in May 2017, it owed its residents $7,487,000 for "[r]esident entrance fees, deposit fees and trust funds" that the

residents had paid at the inception of their residency at the Atrium (the Residents). It also owed $6,097,000 to some 800 individual bondholders who had invested in the Atrium by purchasing bonds (the Bondholders).[1] The circuit court concluded that the Bondholders have priority over the rights of the Residents to the remaining assets of the Atrium. We reverse and remand as pursuant to *M&I First National Bank v. Episcopal Homes Management, Inc.*, 195 Wis. 2d 485, 536 N.W.2d 175 (Ct. App. 1995), the Residents' entrance fees and security deposits have priority over the interests of the Bondholders.

*Facts*

¶2     This case involves the demise of the Atrium, a senior housing facility in Racine, Wisconsin. The Residents, prior to occupying a unit, were all required to pay an entrance fee, some a security deposit, and all paid a monthly fee to live in their unit. Beginning in 1988, the Residents entered into one of six versions of residency agreements, all of which provided for payment of a fee typically characterized as an entrance fee of approximately $40,000 to $238,000. An amount equal to a specified proportion of the entrance fee was to be paid to the Resident after a Resident terminated occupancy at the Atrium, and while the agreements vary as to when the Residents would receive reimbursement of the entrance fees, all of the agreements provided that a portion of the entrance fees would be reimbursed. Certain of the residency agreements also provided for payment of a security deposit of approximately $608 to $1800.

---

[1] The Bondholders are represented on appeal by the Bank of New York Mellon Trust Co., as Trustee for bondholders. New York Mellon Trust is the successor trustee and acting trustee for the benefit of the Bondholders in this action.

¶3      The Bondholders' claims against the Atrium exist as a result of their purchase of bonds as an investment.  In 2002, the Atrium, which was operating as a senior housing facility, contracted to construct and operate a separate assisted living facility, called Bay Pointe.  Bonds were sold to finance the project, and various documents were created for investors to review before purchasing the bonds, including a Prospectus, a Mortgage and Security Agreement, a Project Contract, and a Trust Indenture.  The Bondholders were advised via the Prospectus and Project Contract that the entrance fees were "*refundable* resident deposits" that qualified as "Permitted Liens."  (Emphasis added.)  The definition of entrance fees was contained in both the Project Contract and the Prospectus, which defines them as:

> [T]he fees, other than monthly service charges, paid by residents of a Facility to the [Obligor/Corporation] for the purpose of obtaining the right to reside in a Facility, *including any refundable resident deposits* described in any lease or similar residency agreements ….

(Emphasis added.)  According to both the Prospectus and the Project Contract, "Permitted Liens" include "Entrance Fees or similar funds deposited by or on behalf of such residents."

¶4      While the Bondholders were granted a first mortgage on the Atrium's property, the grant was subject to "Permitted Liens":

> 5.12 Restrictions as to Creation of Liens.
>
> (a) The Obligor agrees that it will not create or suffer to be created or exist any Lien upon its Property other than … Permitted Liens whenever created, *all of which Permitted Liens may be superior to the Lien of the Mortgage*….

The Prospectus also provides that "[p]ursuant to the Mortgage, the Corporation has granted to the Trustee a first mortgage lien on the campus currently owned by

the Corporation, and a security interest in certain tangible personal property of the Corporation, *subject in each case to Permitted Liens as defined in the Project Contract*." (Emphasis added.)

¶5    Accordingly, the Bondholders were aware that their rights were subject to the repayment of entrance fees and security deposits due to the Residents.  The Prospectus informed each Bondholder that the Residents had priority with respect to a resident's entrance fees:

> [R]esidents of the facilities that require entrance fees may have certain rights with respect to their entrance fees and *therefore the entrance fees held by the Corporation may not be available to pay the Series 2002 Bonds in the event of a foreclosure.*
>
> The effectiveness of the security interest in Pledged Revenues granted pursuant to the mortgage may be limited by a number of factors, including … (vi) the rights of residents and prospective residents in entrance fees paid to the Corporation; (vii) constructive trusts, equitable or other rights impressed or conferred by a federal or state court in the exercise of its equitable jurisdiction.

(Emphasis added.)

¶6    When the Atrium was placed under receivership pursuant to WIS. STAT. ch. 128 (2019-20),[2] both the Residents and the Receiver asked the court for a determination as to whether the claims of the Residents or the claims of the Bondholders had priority over the assets of the Atrium.  The circuit court issued a

---

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

decision determining that the Bondholders' claims had priority over the Residents' claims.[3]

¶7    As the receivership action progressed, the Receiver was given authorization to sell the main asset of the Atrium: the building housing the senior living complex and assisted living facility. The Residents and the Bondholders stipulated to the approval of the sale with the proceeds held in trust pending this appeal.[4]

*Jurisdiction*

¶8    As an initial matter, the Bondholders[5] assert that we lack jurisdiction to hear this appeal on the ground that the Residents did not appeal from the April 23, 2018 order which established priority.[6] The Bondholders premise their argument on *United States v. Burczyk*, 54 Wis. 2d 67, 194 N.W.2d 608 (1972), where the court dismissed an appeal as untimely due to the failure of the creditor

---

[3] The Honorable David W. Paulson entered a decision on April 4, 2018, and signed the order determining priority on April 23, 2018. The case was subsequently assigned to the Honorable Michael J. Piontek.

[4] The Residents appealed from the court's Order Approving Stipulation to Hold Net Sale Proceeds in Escrow, entered on July 31, 2019, and just to be safe, the Residents filed a second, similar draft order containing the "final for purposes of appeal" language approved in *Wambolt v. West Bend Mutual Insurance Co.*, 2007 WI 35, ¶¶44, 48, 299 Wis. 2d 723, 728 N.W.2d 670. The circuit court signed that order on October 17, 2019, which the Residents appealed from as well. We ordered these appeals consolidated.

[5] We note that the Respondents in this appeal—the Bondholders and the Receiver—filed a joint brief. For ease of reading, we will refer to the Bondholders throughout.

[6] On December 23, 2019, the Bondholders filed a motion to dismiss this consolidated appeal, arguing that the Residents did not timely appeal from the April 23, 2018 order. Upon review of the motion and the objection, we ordered the motion to dismiss held in abeyance, indicating that the parties could argue that this court lacks jurisdiction in their briefing. We now deny the Bondholders' motion to dismiss, as we address the jurisdiction argument on the merits.

to timely appeal a nonfinal order concerning priority, similar to what occurred in this case. ***Burczyk*** was decided in 1972 when WIS. STAT. ch. 128 contained specific provisions requiring appeals from interlocutory orders in ch. 128 cases. In 1972, WIS. STAT. § 128.15(1) (1971-72) required that an appeal be commenced within thirty days of an interlocutory order:

> An appeal may be taken from such order *within thirty days* from the entry thereof, but not afterwards, in the manner provided for taking appeals from orders in civil actions.

(Emphasis added.)

¶9     WISCONSIN STAT. § 128.15 (1983-84)[7] was modified in 1983 to eliminate the "thirty day" appeal deadline and made appeals from WIS. STAT. ch. 128 proceedings uniform with all other appeals via WIS. STAT. § 808.04(1). 1983 Wis. Act 219, § 26. The legislative notes to the amendment of § 128.15(1) state:

> NOTE:  The last sentence of [§] 128.15(1), providing an appeal deadline of 30 days after entry of order, is repealed for greater uniformity. *An appeal must be initiated within the time specified in [§] 808.04(1).*

1983 Wis. Act 219, § 26 (emphasis added).

¶10     WISCONSIN STAT. § 808.04(1) requires that a notice of appeal be filed within forty-five days "of entry of a *final judgment or order*" (or ninety days

---

[7] WISCONSIN STAT. § 128.15 has since been amended pursuant to 1997 Wis. Act 253, § 123, but the legislative note indicates the amendment "subdivides provision, reorders text and replaces language for greater readability and conformity with current style." Thus, § 128.15 is not substantively different from the 1983 amendment.

10

from such entry if notice of entry is not given). (Emphasis added.) In short, ***Burczyk*** has been abrogated by statute, and an appeal in a WIS. STAT. ch. 128 receivership is to be initiated within the time specified in § 808.04(1), which the Residents did as the April 23, 2018 order was clearly not "a final judgment or order," *see* § 808.04(1), as "[a] final judgment or final order is a judgment, order or disposition that disposes of the entire matter in litigation as to one or more of the parties, whether rendered in an action or special proceeding" and, as relevant here, is "entered in accordance with [WIS. STAT. §§] 806.06(1)(b) or 807.11(2)," *see* WIS. STAT. § 808.03(1)(a). The April 23, 2018 order addressed priority, but left for another day the activity needed to close out the receivership estate. That final disposition occurred two years later on July 31, 2019, when the court approved the sale of the Atrium and distribution of proceeds.

¶11 We also find support in ***Wambolt***, where our supreme court instructed circuit and appellate courts that in the absence of express language stating that an order is "final for purposes of appeal," any doubt should be resolved in favor of hearing the appeal. ***Wambolt v. West Bend Mut. Ins. Co.***, 2007 WI 35, ¶46, 299 Wis. 2d 723, 728 N.W.2d 670 ("[A]bsent explicit language that the document is intended to be the final order or final judgment for purposes of appeal, appellate courts should liberally construe ambiguities to preserve the right of appeal."); *see also* ***Admiral Ins. Co. v. Paper Converting Mach. Co.***, 2012 WI 30, ¶27, 339 Wis. 2d 291, 811 N.W.2d 351. The ***Wambolt*** language was rightfully not contained in the April 23, 2018 order, as the case was not terminated as to any party. With our jurisdiction thus established, we proceed to the merits.

11

*Standard of Review*

¶12     The Bondholders and Residents agree that the question of priority is a question of law that we review independent of the circuit court's decision. ***Episcopal Homes***, 195 Wis. 2d at 498; *see also* ***Wisconsin End-User Gas Ass'n v. PSC***, 218 Wis. 2d 558, 564, 581 N.W.2d 556 (Ct. App. 1998) ("The interpretation of a contract is a question of law which is subject to de novo review.").

*Priority*

¶13     The merits of this appeal, factually and legally, are on point with this court's decision in ***Episcopal Homes***. Episcopal Homes Management, Inc., like the Atrium, owned and operated a senior housing facility, which defaulted on its mortgage obligation. ***Episcopal Homes***, 195 Wis. 2d at 489-93. M&I First National Bank, the trustee for approximately 1700 bondholders who held mortgage revenue bonds that financed the construction of the facility, claimed that its mortgage security interest had priority over the entrance fees (in excess of $1,000,000) paid by the residents of the housing facility. ***Id.*** at 488. The residency agreements executed by the Residents in this case are similar to the residency agreements executed by the residents in ***Episcopal Homes***. *See **id.*** at 490-92.

¶14     We held in ***Episcopal Homes*** that the residency agreements constituted rental agreements within the meaning of WIS. ADMIN. CODE § ATCP 134.02(10) and that "the parties contracted in a landlord/tenant

capacity."[8]  *Episcopal Homes*, 195 Wis. 2d at 489, 506. The residency agreements required an entrance fee and monthly payments in exchange for the use and occupation of the property and therefore constituted a lease. *Id.* at 500-06. We adopt our rationale from *Episcopal Homes* and hold as a matter of law that the Atrium and the Residents contracted in a landlord/tenant capacity and that the Atrium residency agreements constituted "rental agreements" within the meaning of § ATCP 134.02(10) (June 2018).[9]

¶15    After establishing the legal relationship between the contracting parties, *Episcopal Homes* then addressed "whether M&I is entitled to its claimed priority security interest in the entrance fees fund as against the interests of the residents." *Episcopal Homes*, 195 Wis. 2d at 506. As the parties contracted within a landlord/tenant relationship, the court applied WIS. ADMIN. CODE § ATCP 134, titled Residential Rental Practices, in addressing priority. Section ATCP 134.02(11) defines "[s]ecurity deposit" as "the total of all payments and deposits given by a tenant to the landlord as security for the performance of the tenant's obligations, and includes all rent payments in excess of 1 month's prepaid rent." Section ATCP 134.06 specifically addresses security deposits and provides

---

[8] We note that in *M&I First National Bank v. Episcopal Homes Management*, 195 Wis. 2d 485, 501, 536 N.W.2d 175 (Ct. App. 1995), the court found that the residency agreement established a landlord/tenant relationship despite the provisions in the agreement stating that the agreement was not a lease. Some of the agreements in this case include similar provisions. We agree with the court's reasoning in *Episcopal Homes* on this point, that despite the language used, the "construction of the residency agreement" demonstrates that the "fundamental goal was housing in exchange for rent." *Id.* at 503.

[9] "'Rental agreement' means an oral or written agreement between a landlord and tenant, for the rental or lease of a specific dwelling unit or premises, in which the landlord and tenant agree on the essential terms of the tenancy, such as rent. 'Rental agreement' includes a lease." WIS. ADMIN. CODE § ATCP 134.02(10).

that "[a] landlord *shall*" return to the "tenant the full amount of any security deposit paid by the tenant, less any amounts that may be withheld" pursuant to the code, upon the tenant vacating the premises. Sec. ATCP 134.06(2), (3) (emphasis added).

¶16     In a discussion based in part on public policy considerations, the court found that the entrance fees served as security for the resident's performance of their obligations at the termination of the tenancy, thereby constituting a "[s]ecurity deposit" under WIS. ADMIN. CODE § ATCP 134.02(11). *Episcopal Homes*, 195 Wis. 2d at 507, 509 ("The classification of a deposit is based on the intent of the parties as manifested by their contractual language; however, what the parties name the nature and function of the deposit is not always controlling.") As in *Episcopal Homes*, the Atrium contractually held the entrance fees and security deposits for payment of any delinquent fees upon a resident of the Atrium vacating his or her unit.[10]     As we said in *Episcopal Homes*, and which applies equally to the residents of the Atrium, "the security deposits in this case are substantial," but "despite the substantial security deposit, the charges against the deposit could also be substantial.   In a given case, the amount owed [Episcopal] could consume all, or a great portion of, the entrance fee." *See id.* at 509-10.

---

[10] We acknowledge that some of the residency agreements also included language that the entrance fee is not a security deposit under landlord/tenant law.  For the same reasons the *Episcopal Homes* court found that the language in the agreements indicating it was not a lease was not controlling, *see supra* note 8, we conclude the language in the Residents' agreements addressing the entrance fees is not controlling, *see Episcopal Homes*, 195 Wis. 2d at 501-03.  The residency agreements in this case operate as rental agreements, and the entrance fees operate as security deposits.  *See id.* at 501-02 ("[T]he labels which parties use in their agreements are not always controlling," and "we … must be careful to not alter the *true nature* of the parties' contract and the legal relationship which they created by their agreement." (emphasis added)).

¶17    In ***Episcopal Homes***, the circuit court imposed a constructive trust on the entrance fees fund, which we concluded was proper under the circumstances as the subordination provisions[11] contained within the residency agreement were in violation of the public policy of this state and were "unconscionable and … unenforceable against the residents" and would "unjustly enrich M&I." ***Episcopal Homes***, 195 Wis. 2d at 512-14.

¶18    We need not create a constructive trust in this action as neither party has been unjustly enriched. The sole question before us is whether the Residents or the Bondholders have the superior right to the assets being held in the receivership. We conclude the entrance fees and security deposits paid by the Residents in this case are superior in priority to the Bondholders' claims. The Bondholders were aware from the Prospectus and Project Contract that the

---

[11] The court in ***Episcopal Homes*** found the subordination provisions, which stated that "the resident's rights under the agreement were subordinate to the first mortgage lien and that the resident's claims against [the housing facility] would be unsecured in the event of [the facility's] liquidation," to be ineffective as "form provisions" under WIS. ADMIN. CODE §§ ATCP 134.02(4) and 134.06(3) (Apr. 1993). ***Episcopal Homes***, 195 Wis. 2d at 511-12 (citing ***Moonlight v. Boyce***, 125 Wis. 2d 298, 304, 372 N.W.2d 479 (Ct. App. 1985)).

In this case, the Bondholders also argue that some of the Atrium residency agreements had a subordination clause, and based on our review, it appears only contract six included the subordination provision, which states: "This Agreement is subject and subordinate to any mortgage or deed of trust which now or hereafter covers the property of which the Premises is a part." We note that since ***Episcopal Homes***, both the state statutes and the administrative code addressing landlord/tenant law have been amended, *compare* ch. ATCP 134 (Apr. 1993), *with* ch. ATCP 134 (June 2018); *see generally* 2011 Wis. Act 143, and the previous discussion of "form provisions" have been removed from ch. ATCP 134. Instead, the code now references "nonstandard rental provisions." Sec. ATCP 134.06(3)(a)6., (3)(b). The Bondholders do not argue that the subordination clause as included in contract six now complies with the current code provisions under ch. ATCP 134. Accordingly, and as we found in ***Episcopal Homes***, we conclude that the subordination provisions in the Atrium residency agreements are of no legal effect, despite the amendments to landlord/tenant law.

entrance fees constituted permitted liens and had priority over their claims when they purchased their bonds. It would be disingenuous to now assert that these provisions indicating that the entrance fees were permitted liens are meaningless. Thus, the rights of the Residents to their entrance fees and security deposits are superior to the Bondholders' rights to the Atrium's assets, and as such, the circuit court erred as a matter of law in its order that the Bondholders have priority over the entrance fees and security deposits owned by the Residents.[12]

*Conclusion*

¶19    We hold that (1) the Residents and the Atrium contracted as landlord and tenant, (2) their contracts were rental agreements within the meaning of the law, (3) the entrance fees (and security deposits) were security deposits within the meaning of the law, and (4) the circuit court erred in giving the Bondholders a priority security interest over the Residents' entrance fees and security deposits. We remand to the circuit court for proceedings consistent herein.

---

[12] The Residents also claim that the Receiver violated his fiduciary duty to the Residents when he "[took] sides on this issue," citing to ***Community National Bank v. Medical Benefit Administrators, LLC***, 2001 WI App 98, ¶7, 242 Wis. 2d 626, 626 N.W.2d 340 ("A receiver is a fiduciary to all who come within the scope of its receivership."). The Receiver argues that he "must distribute proceeds of the sale of the Assets in accordance with the priorities established by WIS. STAT. §§ 128.17 and 128.18 and as ordered by the Circuit Court," and in order to accomplish this duty, "the Receiver is charged with investigating and confirming the priority and perfection of claimed interests in the Assets of the Receivership Estate." *See, e.g.*, WIS. STAT. §§ 128.17, 128.18, 128.19. The Residents' argument on this issue is undeveloped, with little citation to legal authority, aside from the above referenced case, in support of its position. *See* ***State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992). The Receiver moved the circuit court to rule on the issue of priority so that he could accomplish his duties under WIS. STAT. ch 128. The Receiver has not breached his fiduciary duty by asking the court to make a decision as to priority.

*By the Court.*—Orders reversed and cause remanded.

Not recommended for publication in the official reports.