COURT OF APPEALS
DECISION
DATED AND FILED

November 22, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP137**

STATE OF WISCONSIN

Cir. Ct. No. **2022CV636**

IN COURT OF APPEALS
DISTRICT IV

---

MARQUARDT MANAGEMENT SERVICES, INC. AND RIVERSONG, INC.,

   PLAINTIFFS-APPELLANTS,

 V.

ATTIC ANGEL ASSOCIATION, INC., MARY ANN DRESCHER, CLAUDIA BROWN, SUSAN BUSH, AND DEREK BUCKLEY,

   DEFENDANTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Dane County: JULIE GENOVESE, Judge. *Affirmed in part; reversed in part and cause remanded for further proceedings*.

Before Graham, Nashold, and Taylor, JJ.

¶1     TAYLOR, J. Marquardt Management Services, Inc., and Attic Angel Association, Inc., jointly formed Riversong, Inc., for the purpose of

developing a senior living campus in Verona, Wisconsin. In doing so, they executed numerous contracts and documents.

¶2 Riversong failed to get approval from the City of Verona to build the senior living campus on the property it intended to purchase and develop. Nonetheless, Riversong continued to search for sites in and around the Verona area to develop a long-term care campus. At some point, Attic Angel began working with a separate organization to develop an independent care facility in Verona.

¶3 Marquardt and Riversong (collectively, the "Plaintiffs") sued Attic Angel, alleging that it breached two provisions of the parties' Member Agreement—the "Area of Exclusivity" and "Confidentiality" provisions—and the covenant of good faith and fair dealing implied in that contract. Riversong also asserted individual claims against four Riversong board of directors who were affiliated with Attic Angel (the "defendant directors") for breach of fiduciary duties and for usurpation of corporate opportunity. In response, Attic Angel and the defendant directors (collectively, the "Defendants") filed a motion to dismiss the causes of action for failure to state a claim. The circuit court granted the motion and dismissed all of the Plaintiffs' claims. The Plaintiffs now appeal.

¶4 We conclude that the circuit court properly dismissed the Plaintiffs' claims against Attic Angel regarding the Area of Exclusivity provision and the implied covenant of good faith and fair dealing. We also conclude that the court properly dismissed Riversong's claim against the defendant directors for usurpation of corporate opportunity. We conclude, however, that the complaint included sufficient factual allegations to state a claim against Attic Angel regarding breach of the Confidentiality provision and against the defendant

directors for breach of fiduciary duty. Accordingly, we affirm the circuit court's order in part, reverse in part, and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶5 When considering a motion to dismiss, all well-pleaded facts in a complaint must be accepted as true. *Cattau v. National Ins. Servs. of Wis.*, 2019 WI 46, ¶4, 386 Wis. 2d 515, 926 N.W.2d 756. The following facts are from the complaint and two contracts that the circuit court incorporated by reference.

¶6 Marquardt and Attic Angel are both Wisconsin nonstock corporations that manage and operate long-term care facilities.

¶7 In early 2018, Marquardt commissioned a market feasibility analysis regarding a potential long-term care project in the area of Verona, Wisconsin.

¶8 In June 2018, after preliminary discussions regarding the potential for a long-term care facility[1] in the Verona area, Marquardt and Attic Angel jointly formed Riversong, Inc., a nonstock corporation. In doing so, Marquardt and Attic Angel executed a series of documents and contracts, including the Senior Living Campus Development Joint Venture Agreement ("JVA"), the LPC1, Inc., Member

---

[1] The parties use various terms to describe the "senior living campus" that Riversong intended to develop. For purposes of consistency and because it appears to accurately describe the scope of the project considered, we will generally use the term "long-term care facility" to describe the facility or campus the parties contemplated developing, which included both independent and assisted living facilities and services. We also note that this term is used throughout the complaint.

Agreement ("MA"), Articles of Incorporation, and Bylaws.[2] These corporate documents were executed on the same day that Riversong was formed. Both the JVA and the MA are relevant to this appeal.

¶9 The JVA states that Marquardt and Attic Angel shall form, as a joint venture, a Wisconsin nonstock, not-for-profit corporation for the purpose of acquiring a specific, 160-acre parcel in Verona (the "160-acre site"), on a portion of which they would develop a "senior living campus." The JVA provides that this corporation would enter into a "Development Agreement" with the town of Verona. However, according to the terms of the JVA, if the corporation failed to execute the Development Agreement by November 30, 2018, the JVA would automatically terminate.

¶10 The JVA also provides that Riversong is to be managed by a board of directors with seven members, four of whom would be designated by Attic Angel and three of whom would be designated by Marquardt.[3] The Attic Angel designees on Riversong's board were defendant Mary Ann Drescher, who, at all relevant times, served as Attic Angel's president and CEO and as Riversong's president, as well as defendants Claudia Brown, Susan Bush, and Derek Buckley, who, at all relevant times, served on Attic Angel's board of directors.

---

[2] In briefing to this court, the parties refer to the jointly formed corporation as "Riversong." However, the name "Riversong" does not appear in either the JVA or the MA, the two contracts at issue here. Rather, both documents refer to "LPC1, Inc." Although it is unclear from the record, we assume without deciding that, at some point, LPC1, Inc., became Riversong, Inc. Accordingly, we follow the parties' lead and refer to the jointly formed corporation as "Riversong."

[3] The JVA states, in pertinent part: "The Joint Venture shall be managed by its board of directors ("Board of Directors"). The Board of Directors will initially be comprised of 7 members. [Attic Angel] shall have the right to designate 4 members of the Board of Directors. [Marquardt] shall have the right to designate 3 members of the Board of Directors."

¶11     According to the JVA, the MA "govern[s] all rights and obligations of the members of the Joint Venture."  For its part, the MA imposes "certain restrictions, rights, powers, duties and obligations" on the "Members"—*i.e.*, Attic Angel and Marquardt.  As relevant here, the MA contains an "Area of Exclusivity" provision stating that Riversong is to be the "exclusive provider" of long-term care facilities within five miles of "the main campus of the Corporation."  The MA also contains a "Confidentiality" provision prohibiting members from disclosing or using any confidential information for purposes outside the joint venture.[4]  Unlike the JVA, the MA does not set forth any conditions for its automatic termination, but provides that an individual member may withdraw from the corporation for any reason.  The withdrawing member must give at least 180 days' written notice of its withdrawal to the other member and to Riversong.  Upon receipt of the notice, the non-withdrawing member may trigger the dissolution of the corporation.

¶12     In the months following its formation, Riversong sought to obtain approval from the City of Verona planning commission for the development of between 60 and 80 acres of the 160-acre site.  After the planning commission raised concerns about the proposed project, it was "mutually determined" that the planned project was "unlikely to succeed."  As a result, Marquardt and Attic Angel did not execute the Development Agreement by the November 30, 2018 deadline, and the JVA automatically terminated.

---

[4] The relevant portions of these provisions of the MA are reproduced later in this opinion.

¶13     After the termination of the JVA until mid-2020, the Riversong board of directors continued to meet, and multiple proposals were presented to and discussed by the Riversong directors regarding alternative locations in and around Verona for long-term care campus locations. According to the complaint, however, the defendant directors rejected those proposals "without significant explanation or discussion."

¶14     In December 2018, defendant director Drescher informed Matt Mauthe, Marquardt's CEO and Riversong director, that Attic Angel was exploring the possibility of working with a separate entity to develop and manage a senior living project in Verona. In response, Mauthe informed Drescher that engaging in such negotiations and/or participating in such a project with a separate entity would violate its contractual and other obligations to Riversong.

¶15     In May 2020, while Riversong was still exploring potential real estate in Verona, Mauthe received a call from a contractor who questioned why Marquardt was not participating in a bidding process for a development project in Verona involving Attic Angel and an unknown third party, later identified as Forward Development Group ("Forward").

¶16     At a subsequent May 2020 Riversong board meeting, the defendant directors disclosed Attic Angel's involvement with Forward to develop and manage an independent living facility, in which Attic Angel would have an equity position. Riversong's attorney warned that such a relationship with Forward could violate the MA's Area of Exclusivity provision and potentially create a conflict of interest.

¶17     In August 2020, Attic Angel provided Marquardt with notice of its intent to withdraw from Riversong, which became effective in February 2021.

6

¶18    The Plaintiffs sued Attic Angel and the four defendant directors. Their complaint alleges that Attic Angel violated its contractual obligations under the MA, including its obligations under the Area of Exclusivity and Confidentiality provisions. The complaint also alleges that the defendant directors individually violated their fiduciary duties to Riversong and usurped a corporate opportunity that should have been made available to Riversong.

¶19    Attic Angel moved to dismiss the Plaintiffs' claims for failure to state a claim pursuant to WIS. STAT. § 802.06(2)(a)6. (2021-22).[5] The circuit court granted the motion and dismissed all of the claims. The Plaintiffs appeal.

## DISCUSSION

¶20    The Plaintiffs argue that their complaint[6] alleged sufficient facts as to each of their claims to survive a motion to dismiss for failure to state a claim. We address each of the claims in turn.

### I.  Governing Principles and Standard of Review.

¶21    As noted, the Plaintiffs request that we review the circuit court's dismissal of all of the claims in their complaint for failure to state a claim. *See*

---

[5] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[6] The operative complaint for the purposes of this appeal is the "First Amended Complaint." For ease of reference, we refer to the First Amended Complaint simply as "the complaint."

WIS. STAT. § 802.06(2)(a)6.[7]   Whether a complaint states a claim upon which relief can be granted is a question of law, and we review de novo a circuit court's order granting a defendant's motion to dismiss. ***Data Key Partners v. Permira Advisers LLC***, 2014 WI 86, ¶17, 356 Wis. 2d 665, 849 N.W.2d 693.

¶22    Pursuant to WIS. STAT. § 802.02, pleadings shall contain "[a] short and plain statement of the claim, identifying the transaction or occurrence or series of transactions or occurrences out of which the claim arises and showing that the pleader is entitled to relief."   Sec. 802.02(1)(a).   When considering a motion to dismiss, the pleadings are to be liberally construed so as to do substantial justice. Sec. 802.02(6); ***Doe v. Archdiocese of Milwaukee***, 2005 WI 123, ¶35, 284 Wis. 2d 307, 700 N.W.2d 180.   We accept as true all facts well-pleaded in the complaint and the reasonable inferences therefrom. ***Kaloti Enters., Inc. v. Kellogg Sales Co.***, 2005 WI 111, ¶11, 283 Wis. 2d 555, 699 N.W.2d 205; ***Data Key***, 356 Wis. 2d 665, ¶19.   It is the sufficiency of the facts alleged that controls whether a claim is properly pled.   ***Doe***, 284 Wis. 2d 307, ¶19.   In order to satisfy this requirement, "[p]laintiffs must allege facts that, if true, plausibly suggest a violation of applicable law." ***Data Key***, 356 Wis. 2d 665, ¶21.   We do not accept as true legal conclusions that are stated in the complaint. ***Id.***, ¶19.

¶23    This appeal additionally requires us to interpret the language of written contracts.   The interpretation of an unambiguous contract presents a question of law. ***Tufail v. Midwest Hosp., LLC***, 2013 WI 62, ¶22, 348 Wis. 2d

---

[7] WISCONSIN STAT. § 802.06(2)(a) states, in pertinent part:  "Every defense, in law or fact, except the defense of improper venue, to a claim for relief in any pleading, whether a claim, counterclaim, cross claim, or 3rd-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:  …. 6. Failure to state a claim upon which relief can be granted."

631, 833 N.W.2d 586. "When construing contracts that were freely entered into, our goal 'is to ascertain the true intentions of the parties as expressed by the contractual language.'" ***Town Bank v. City Real Est. Dev., LLC***, 2010 WI 134, 330 Wis. 2d 340, ¶33, 793 N.W.2d 476 (citation omitted). "Contract language is construed according to its plain or ordinary meaning, consistent with 'what a reasonable person would understand the words to mean under the circumstances.'" ***Tufail***, 348 Wis. 2d 631, ¶28 (citation omitted). "Where the terms of the contract are clear and unambiguous, we construe the contract according to its literal terms." ***Id.***, ¶26.

¶24    Finally, this appeal requires us to interpret statutes. When interpreting statutes, Wisconsin courts begin "with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry." ***State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. "Statutory language is given its common, ordinary, and accepted meaning." ***Id.***; *see* WIS. STAT. § 990.01(1). The interpretation of a statute is a question of law that we review de novo. ***Mueller v. Edwards***, 2017 WI App 79, ¶5, 378 Wis. 2d 689, 904 N.W.2d 392.

## II. Incorporation by Reference.

¶25    Before analyzing the substance of the claims at issue, we must first address the documents we will consider in doing so. Although the parties' dispute involves the interpretation and interaction of the JVA and the MA, which were referenced throughout the Plaintiffs' complaint and are central to their claims, neither document was attached to the complaint. They were, however, attached to the Defendants' motion to dismiss. Additionally, the Plaintiffs attached the minutes of three Riversong board meetings to their memorandum of law in

opposition to the Defendants' motion to dismiss. The JVA, the MA, and the minutes of those three board meetings were all considered by the circuit court through the "incorporation by reference" doctrine.

¶26 Although a reviewing court cannot add facts in the process of liberally construing the complaint, *see Doe*, 284 Wis. 2d 307, ¶19, a court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment[8] if the document "was referred to in the plaintiff's complaint, is central to his or her claim, and its authenticity has not been disputed." *Soderlund v. Zibolski*, 2016 WI App 6, ¶37, 366 Wis. 2d 579, 874 N.W.2d 561. In effect, the incorporation by reference doctrine provides that, in some instances in which a plaintiff refers to a document in the plaintiff's complaint, the defendant may then submit the document to the court without converting the defendant's dismissal motion to a motion for summary judgment. The doctrine prevents a plaintiff from evading dismissal simply by failing to attach to the complaint a document that proves the claim has no merit. *Id.*, ¶38 (quoting *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012)).

¶27 Like the circuit court, we conclude that, in addition to the complaint, it is appropriate to consider the JVA and the MA which were attached to the Defendants' motion to dismiss. These documents are referred to throughout the Plaintiffs' complaint, are central to the Plaintiffs' claims, and raise no authenticity disputes. The Riversong board meeting minutes, however, which the Plaintiffs

---

[8] *See* WIS. STAT. § 802.06(2)(b) ("If on a motion asserting the defense described in par. (a)6. to dismiss for failure of the pleading to state a claim upon which relief can be granted, … matters outside of the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in [WIS. STAT. §] 802.08.").

attached to their response to the Defendants' motion to dismiss, were not even mentioned in the Plaintiffs' complaint. We will therefore not consider the board meeting minutes submitted by the Plaintiffs.[9]

## III.  Breach of Contract.

¶28    "A complaint states a claim for breach of contract when it alleges: (1) a contract between the plaintiff and the defendant that creates obligations flowing from the defendant to the plaintiff; (2) failure of the defendant to do what it undertook to do; and (3) damages." *Brew City Redevelopment Grp., LLC v. Ferchill Grp.*, 2006 WI App 39, ¶11, 289 Wis. 2d 795, 714 N.W.2d 582, *aff'd*, 2006 WI 128, 297 Wis. 2d 606, 724 N.W.2d 879. On appeal, the Plaintiffs argue that the complaint alleges sufficient facts to state the following claims for breach of contract: (1) Attic Angel violated the Area of Exclusivity provision; (2) Attic Angel violated an implied covenant of good faith and fair dealing; and (3) Attic Angel violated the Confidentiality provision. We address each argument below.

### A.  Area of Exclusivity.

¶29    The MA's Area of Exclusivity provision states in relevant part:

> [T]he  Corporation shall be the exclusive provider of:
> (i) independent living facilities and services; and
> (ii) assisted living facilities and services in the geographic area identified as the five (5) mile radius surrounding the main campus of the Corporation.[[10]]

---

[9] Because we conclude that the board meeting minutes submitted to the circuit court do not fall within the incorporation by reference doctrine and we will therefore not consider them, we do not consider the Plaintiffs' claim that the circuit court erroneously treated these minutes as "exhaustive."

[10] "The Corporation" referenced in the MA and the JVA refers to Riversong.

The complaint alleges that Attic Angel violated this provision by "agreeing to participate" in another independent living facility with Forward within five miles of "all potential Verona real estate identified by Marquardt and Riversong for Riversong's long-term care campus in violation of the Member Agreement."

¶30    We conclude that the complaint fails to state a claim for breach of the Area of Exclusivity provision for the reasons set forth below.[11]

¶31    The parties focus their arguments on the meaning of the phrase "the main campus of the Corporation" in the MA, including whether this phrase should be read together with the definitions of "Property" as set forth in the MA and the JVA.    We decline to resolve whether the phrase "the main campus of the Corporation" necessarily refers to a campus on the original 160 acres of Verona land initially contemplated for purchase and development by the parties described in the JVA, or whether it could also have been intended to refer to a campus on any other property that the parties might later purchase and develop as "the main campus of the Corporation."    Resolving this dispute is not necessary to determining whether Attic Angel breached the Area of Exclusivity.    Under either interpretation, we conclude that the complaint fails to state a claim for breach of contract because, as we now explain, it is undisputed that "the main campus of the Corporation" never existed.

---

[11] Although not raised by the parties, we question whether the Plaintiffs' claimed breach of the MA's Area of Exclusivity provision sufficiently pleads facts which plausibly show that they are entitled to relief on their allegation that Attic Angel merely *agreed* to develop an independent living facility with Forward.  The parties do not identify any precedent for the proposition that a party's agreement to engage in activities that could constitute a future breach of contract, but which may or may not come to fruition, is sufficient to plausibly allege a breach of contract claim.  However, because this issue is not raised by the parties, we do not address it.

¶32 The language of the Area of Exclusivity provision unambiguously contemplates a "geographic area" that is centered around the "main campus of the Corporation." However, Riversong never actually purchased real estate for a "senior living campus" or developed any long-term care facilities. Therefore, there was never any "main campus" from which to draw the five-mile radius. If Riversong's main campus was meant to refer to the specific property described in the JVA, that property was never acquired, no senior living campus was developed, and no area of exclusivity was established. Alternatively, if "the main campus of the Corporation" is interpreted more broadly to encompass the main campus on any other property in Verona that the parties might later acquire and develop, then again, no such property was ever acquired, no campus was ever developed, and no area of exclusivity was established. The Plaintiffs fail to identify any specific "geographic area" subject to this Area of Exclusivity provision because Riversong has no existing "main campus" upon which long-term care facilities have been erected nor from which long-term care services are provided. In other words, there is no "geographic area" identified by the Plaintiffs from which a five-mile area of exclusivity radius can be drawn, because it is impossible to draw a five-mile radius around a nonexistent point. Hence, there was never an area of exclusivity established for Attic Angel to breach.

¶33 The Area of Exclusivity provision cannot reasonably be interpreted in the way that the Plaintiffs assert. According to the Plaintiffs, this phrase refers to "all potential Verona real estate identified by Marquardt and Riversong for Riversong's long-term care campus." This argument fails because, as explained, the Area of Exclusivity provision requires an existing "main campus of the Corporation." There is no language in either the MA or the JVA that indicates that the Area of Exclusivity provision attaches to a nonexistent, hypothetical senior

13

living campus that might be built on any property in Verona or surrounding areas that is merely *considered* by the parties for purchase. Therefore, the Area of Exclusivity provision never took effect and does not create any obligations flowing from Attic Angel to the Plaintiffs. *See id.* (holding that a breach of contract claim requires a contract between the plaintiff and the defendant that creates obligations flowing from the defendant to the plaintiff).[12]

¶34    On this basis, we conclude that the Plaintiffs' complaint fails to state a claim that Attic Angel breached the Area of Exclusivity provision.

### B. Implied Covenant of Good Faith and Fair Dealing.

¶35    "Every contract implies good faith and fair dealing between the parties to it, and a duty of cooperation on the part of both parties." *Beidel v. Sideline Software, Inc.*, 2013 WI 56, ¶27, 348 Wis. 2d 360, 842 N.W.2d 240. A party can be liable for breach of this covenant "even though all the terms of the written agreement may have been fulfilled." *Reetz v. Advocate Aurora Health, Inc.*, 2022 WI App 59, ¶30, 405 Wis. 2d 298, 983 N.W.2d 669; *see also Beidel*, 348 Wis. 2d 360, ¶10 ("[M]ere compliance in form, not in substance[,] is a breach of the covenant of good faith that accompanies every contract." (internal quotation marks and citation omitted)). Nonetheless, this cause of action requires an enforceable contractual obligation. *Reetz*, 405 Wis. 2d 298, ¶31. Thus, to state a claim for a breach of this covenant, "the plaintiff must plead that a valid contract

---

[12] The Plaintiffs vaguely argue that Attic Angel has a contractual duty to "refrain from engaging in business activities relating to independent and/or assisted living within the area outlined," but that is not what the plain language of the MA states. Attic Angel has no contractual obligation to stay out of a five-mile radius from a nonexistent "main campus" of Riversong.

with express, definite, enforceable terms exists, and that the breaching party acted without good faith in its performance of that contract." *Id.*

¶36 Here, the complaint alleges that Attic Angel violated the MA's implied covenant of good faith and fair dealing by failing to "reasonably consider Marquardt's proposed sites for a project based in Verona in furtherance of … Riversong's stated goals and intentions as outlined in the Member Agreement." According to the complaint, Attic Angel did so to ensure that it "would not be contractually prohibited from entering into an agreement with a third[ ]party for the operation of an independent and/or assisted living project pursuant to the Area of Exclusivity provision."

¶37 We conclude that the complaint fails to state a claim for breach of this implied covenant because it does not identify any enforceable contractual obligation. The Plaintiffs do not allege that Attic Angel sabotaged the parties' efforts to move forward with the long-term care facility contemplated in the JVA. They additionally fail to identify anything in the MA that obligated Attic Angel to consider alternative sites for a potential long-term care campus when the plan for the campus contemplated in the JVA fell through.

¶38 In setting forth this cause of action, the complaint only identifies the MA's "Area of Exclusivity" provision. This provision, however, does not impose any enforceable contractual obligations on Attic Angel to continue to consider alternative sites. As explained above, this provision prohibits the parties from developing a long-term care facility within five miles of "the main campus of the Corporation." Although there is no dispute that the MA constituted a valid contract between the parties, because Riversong never acquired any property or erected long-term care facilities, there was never a "main campus of the

15

Corporation" from which a five-mile area of exclusivity could be drawn. Because the MA does not impose a contractual obligation to consider alternative sites, Attic Angel could not have breached its obligations under the Area of Exclusivity provision in bad faith. Therefore, the complaint fails to state a claim for breach of the implied covenant of good faith and fair dealing.[13] *See id.*

¶39 The Plaintiffs argue that Attic Angel's alleged sabotage of Marquardt's proposals for alternative sites was sufficient to state a claim for breach of the implied covenant of good faith and fair dealing. Specifically, the Plaintiffs rely on the following statement from the circuit court's written order: "[I]f Attic Angel or its board members had in some way sabotaged the approvals, then Riversong could claim that Attic Angel had committed an actionable breach of good faith and fair dealing." The Plaintiffs misinterpret the court's statement. When this statement is read in context, it is clear that the court was referring to a hypothetical sabotage of the Verona planning commission's approval of the specific 160-acre Verona site described in the JVA, not a sabotage of the Plaintiffs' proposals for alternative sites. As explained above, the Plaintiffs do not point to any allegations in the complaint that Attic Angel sabotaged the planning commission's approvals. Therefore, the circuit court properly dismissed this cause of action for failure to state a claim.

---

[13] Although the Plaintiffs mention the rule that a bad faith claim can be present even if no terms of the contract were violated, they do not develop any argument on that basis. Because this argument is undeveloped, we decline to address it. *See State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) (holding that this court may decline to address undeveloped arguments because we "cannot serve as both advocate and judge").

## C. Confidentiality.

¶40    The Confidentiality provision in the MA limits a member's authority to disclose or use confidential information belonging to "the Corporation," *i.e.*, Riversong, or the other member.  Confidential information[14] is defined as:

> trade secrets, proprietary information and confidential information belonging to the Corporation [or the other Member] that are not generally known to the public, including information concerning business plans, financial statements and other information provided pursuant to this Agreement, operating practices and methods, expansion plans, strategic plans, marketing plans, contracts, customer lists or other business documents that the Corporation [or the other Member] treats as confidential, in any format whatsoever (including oral, written, electronic or any other form or medium).

¶41    The MA protects confidential information belonging to Riversong or the other member, with limited (inapplicable) exceptions:

> [N]o Member will, directly or indirectly, disclose or use (other than solely for the purposes of such Member monitoring and analyzing its investment in the Corporation and performing its obligations under this Agreement), including use for personal, commercial or proprietary advantage or profit, any Corporation Confidential Information [or Other Member Confidential Information] of which such Member is or becomes aware.

This provision, by its plain language, prohibits both the direct and indirect "disclos[ure] or use" of such confidential information for a member's personal, financial, or proprietary benefit.

---

[14] The MA refers to confidential information belonging to the Corporation, *i.e.*, Riversong, as "Corporation Confidential Information."  Confidential information belonging to the other Member is referred to in the MA as "Other Member Confidential Information."  The MA collectively refers to "Corporation Confidential Information" and "Other Member Confidential Information" as "Confidential Information."

¶42     The complaint alleges that Attic Angel violated the Confidentiality provision by impermissibly utilizing the market feasibility study and other confidential information:

> Attic Angel impermissibly utilized Corporate Confidential Information and/or Other Member Confidential Information belonging to Riversong and/or Marquardt, including a market feasibility study conducted by Marquardt, in violation of the Member Agreement for which Attic Angel is liable to both Marquardt and Riversong for damages relating to the loss of propriet[ar]y information concerning the Verona long-term care market.

According to the complaint, Attic Angel "utilized" this information when "making its decision to negotiate with and eventually enter into an agreement with a third[ ]party for an assisted and/or independent living project in Verona, WI." Although the market feasibility study is not attached to the complaint, the complaint alleges the following facts about that study:  "On or about January 31, 2018, Marquardt engaged PMD Advisory Services, LLC to complete a market feasibility analysis for a potential long-term care project in the area of Verona, WI."[15]

¶43     We conclude that these factual allegations and the reasonable inferences therefrom, when taken as true, are sufficient to state a claim for breach of the Confidentiality provision.  *See* **Data Key**, 356 Wis. 2d 665, ¶19.

¶44     First, the complaint alleges sufficient facts to show that the Confidentiality provision creates a contractual obligation flowing from Attic

---

[15]  In its briefing to this court, the Plaintiffs provide more details as to the contents of the market feasibility study.  We do not consider these added details because they are not mentioned in the complaint and because the market feasibility study was neither attached to the complaint nor incorporated by reference.

Angel to the Plaintiffs. *See **Brew City***, 289 Wis. 2d 795, ¶11. Specifically, the complaint identifies the portions of this provision that prohibit Attic Angel from directly or indirectly "disclos[ing]" or "us[ing]" confidential information except in limited circumstances inapplicable here. The MA also establishes that this duty of confidentiality applied while Attic Angel was a member of Riversong and for five years following Attic Angel's withdrawal from Riversong. There is no dispute that the Confidentiality provision was in existence and applicable during the timeframe in question.

¶45 Next, the complaint alleges sufficient facts to plausibly demonstrate that Attic Angel breached its obligation under the Confidentiality provision by using the market feasibility study in its work with Forward. *See **id.*** As an initial matter, the complaint plausibly alleges that this study meets the broad definition of either "Corporation Confidential Information" or "Other Member Confidential Information," which includes "proprietary information and confidential information belonging to the Corporation [or the other Member] that are not generally known to the public" and "other information provided pursuant to this Agreement … that the Corporation [or the other Member] treats as confidential." Here, the complaint specifically alleges that the market feasibility study "belong[s] to Riversong and/or Marquardt" and indicates that it contains "proprietary information concerning the Verona long-term care market." It is reasonable to infer from these allegations that the information in the study is "not generally known to the public." The complaint also alleges that Marquardt individually commissioned this study regarding the feasibility of a long-term care project in the Verona area, and subsequently engaged in "preliminary discussions" with Attic Angel regarding the potential for a long-term care campus in the Verona area before the parties executed the JVA and the MA in June 2018. It is reasonable to

infer that this market feasibility study was provided to, or the contents shared with, Attic Angel.

¶46 Additionally, the complaint alleges that Attic Angel used the market feasibility study for purposes that are not allowed under the Confidentiality provision. Specifically, the complaint states that Attic Angel "utilized" the study "[i]n making its decision to negotiate with and eventually enter into an agreement with [Forward]." When accepted as true, this factual allegation plausibly demonstrates that Attic Angel violated the Confidentiality provision by "us[ing]" confidential information for purposes other than for "monitoring and analyzing its investment in [Riversong]" or "performing its obligations under [the MA]."[16]

¶47 Our conclusion that the complaint states sufficient facts which plausibly show that Attic Angel breached its obligations under the Confidentiality provision is bolstered by the complaint's allegation that, in December 2018, Drescher informed Mauthe that Attic Angel was "exploring" the possibility of working with a separate entity to develop and manage a senior living community in Verona. A reasonable inference that could be drawn from this allegation is that Attic Angel was improperly using the information in the market feasibility study regarding Verona's long-term care market to pursue a business relationship with Forward.

---

[16] In its brief to this court, the Plaintiffs contend that Attic Angel's CEO stated that Attic Angel decided to work with Forward in part because of information from the market feasibility study. We will not consider this factual allegation from the Plaintiffs' brief because it was not included in the complaint nor in the incorporation by reference documents. *Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶19, 356 Wis. 2d 665, 849 N.W.2d 693 ("[A] court cannot add facts in the process of construing a complaint.").

¶48 Finally, the complaint alleges that Attic Angel's breach of the Confidentiality provision caused damages. *See id.* The complaint specifically asserts that the Plaintiffs incurred "damages relating to the loss of propriet[ar]y information concerning the Verona long-term care market." The complaint also alleges that Attic Angel's breach of the Confidentiality provision caused at least $75,000 in damages to Marquardt and an unspecified amount of monetary damage to Riversong.[17] Therefore, we conclude that the Plaintiffs have alleged sufficient facts to state a claim for breach of the Confidentiality provision against Attic Angel.

¶49 The Defendants argue that the complaint does not contain sufficient factual allegations to state a claim for breach of the Confidentiality provision. According to the Defendants, the complaint "lacks facts as to what Attic Angel disclosed; when; to whom; and how such disclosure caused Marquardt and Riversong harm." We disagree. As explained above, the complaint contains enough factual allegations to survive a motion to dismiss. The complaint

---

[17] Technically, the complaint states that the $75,000 in damages was caused by the defendant directors' breach of the MA, not Attic Angel's breach. Nonetheless, because this allegation is under the heading addressing Plaintiffs' claims against Attic Angel and because the complaint does not allege that the defendant directors violated the contractual terms of the MA, we infer that the complaint intended to allege that these damages were caused by Attic Angel's alleged breach of the MA.

Additionally, the complaint alleges that both Marquardt and Riversong were damaged by Attic Angel's alleged breach of confidential information. The complaint specifically alleges that Marquardt suffered damages in excess of $75,000, and we can infer from that allegation that Marquardt suffered those damages when Attic Angel used its confidential information for a purpose outside the MA. Although the complaint does not specify a monetary amount for Riversong's damages, the Defendants do not argue that Riversong's claim for breach of the Confidentiality provision should be dismissed on that basis, and we decline to conclude that it should. As a result, we conclude that the complaint's factual allegations sufficiently allege that Attic Angel's breach of the Confidentiality provision caused damages to both Marquardt and Riversong.

explicitly identifies the market feasibility study as the confidential information that was used by Attic Angel, describes how that study falls under the definition of confidential information, alleges the manner in which Attic Angel impermissibly used that information, and alleges that this conduct caused damages. *See id.* Although these allegations are not especially detailed, they are more than merely "a formulaic recitation of the elements of a cause of action." *Cattau*, 386 Wis. 2d 515, ¶5.

¶50 The Defendants also argue that the Plaintiffs were required to plead that "Attic Angel actually shared the [study]." This argument fails because the Confidentiality provision prohibits both the disclosure and the use of confidential information. Because the complaint alleges that Attic Angel impermissibly "utilized" the study for its own benefit, the complaint need not also allege that Attic Angel shared the study. We therefore reverse the circuit court's dismissal of the Plaintiffs' claim for breach of the Confidentiality provision.

### IV. Breach of Fiduciary Duty.

¶51 Next, the complaint alleges that the defendant directors—*i.e.*, Drescher, Brown, Bush, and Buckley—breached their fiduciary duties to Riversong by failing to act in Riversong's best interests and unreasonably obstructing Riversong's attempts to create a long-term care campus in Verona. A claim alleging a breach of fiduciary duty must satisfy three elements: (1) the defendant had a fiduciary duty; (2) the defendant breached that duty; and (3) the breach of duty caused injury to the plaintiff. *Berner Cheese Corp. v. Krug*, 2008 WI 95, ¶40, 312 Wis. 2d 251, 752 N.W.2d 800. Specifically, the complaint alleges that the defendant directors breached their fiduciary duties pursuant to three exceptions to the "business judgment rule" as set forth under WIS. STAT.

§ 181.0855(1)(a), (c), and (d). For the following reasons, we conclude that the complaint states a plausible claim for breach of fiduciary duty pursuant to the exception set forth under § 181.0855(1)(a).

¶52 We address each element of a claim for breach of fiduciary duty in turn.

## A. Existence of Fiduciary Duty.

¶53 The first element of a breach of fiduciary duty claim is that a fiduciary duty exists. "It is well established that a corporate … director is under a fiduciary duty of loyalty, good faith and fair dealing in the conduct of corporate business." *Modern Materials, Inc. v. Advanced Tooling Specialists, Inc.*, 206 Wis. 2d 435, 442, 557 N.W.2d 835 (Ct. App. 1996). A director of a corporation owes this fiduciary duty to the corporation based on their status as a director of the corporation. *Id.* at 443. This fiduciary duty is distinct from any contractual duty that the director may owe to the corporation. *See Benjamin Plumbing, Inc. v. Barnes*, 162 Wis. 2d 837, 856-57, 470 N.W.2d 888 (1991). Unlike a fiduciary duty, a contractual duty to the corporation arises from an agreement between the corporation and the director. *See id.* (distinguishing between a corporate director's liability that the director incurred as a result of their status as a director and the liability that the director incurred as a result of their contractual relationship with the corporation). When these distinctions are applied to this case, it becomes easier to distinguish between the breach of contract claims and the breach of fiduciary duty claim: the former claims arise from a contractual duty and the latter claim arises out of the duties of loyalty, good faith and fair dealing owed by the defendant directors to Riversong because of their status as Riversong's directors.

¶54 In the present case, the circuit court determined that the complaint failed to state a claim for breach of fiduciary duty against the defendant directors because, after the JVA terminated, Attic Angel was under no contractual obligation to continue to work with the Plaintiffs to develop an alternate site. The complaint's breach of fiduciary duty claim, however, is based on the defendant directors' status as directors of Riversong and their duties of loyalty, good faith, and fair dealing that results from that status, and not on any specific contractual duty that they owed to Riversong. Though the JVA did terminate, the MA survived and the defendant directors continued to serve on the Riversong board.

¶55 On appeal, the Defendants do not dispute that the defendant directors were directors of Riversong and, as a result, that they owed fiduciary duties of loyalty, good faith, and fair dealing to Riversong. *See* WIS. STAT. § 181.0103(9) (defining "director" as including "an individual elected or appointed … to act as a member of the board"). Instead, the Defendants argue that because the Plaintiffs fail to "plead around the Business Judgment Rule," they fail to state a claim for which relief can be granted. We now address the application of the business judgment rule (BJR) to Riversong's claims.[18]

---

[18] We recognize that the defendant directors also owed a fiduciary duty to the members of Riversong—*i.e.*, Marquardt and Attic Angel. ***O'Leary v. Board of Dirs., Howard Young Med. Ctr., Inc.***, 89 Wis. 2d 156, 168, 278 N.W.2d 217 (Ct. App. 1979) (holding that directors of a nonstock corporation owe a fiduciary duty to both the corporation and its members). However, the complaint does not allege—and the Plaintiffs do not argue on appeal—that the defendant directors' alleged conduct breached their fiduciary duty to the members. Therefore, we only address whether the complaint states a claim for breach of the defendant directors' fiduciary duty to Riversong.

## B. Breach of Fiduciary Duty.

¶56 In considering whether the defendant directors breached their fiduciary duty to Riversong, we must analyze the application of statutory immunity laws which Wisconsin courts have treated as codifying the BJR. *See Data Key*, 356 Wis. 2d 665, ¶32. The BJR is a century-old "judicially created doctrine that contributes to judicial economy by limiting court involvement in business decisions where courts have no expertise and contributes to encouraging qualified people to serve as directors by ensuring that honest errors of judgment will not subject them to personal liability." *Reget v. Paige*, 2001 WI App 73, ¶17, 242 Wis. 2d 278, 626 N.W.2d 302. The purpose of the common law BJR is to prevent courts from "second-guessing business decisions." *Data Key*, 356 Wis. 2d 665, ¶34. As explained by our supreme court in 1946:

> [T]his court will not substitute its judgment for that of the board of directors and assume to appraise the wisdom of any corporate action. The business of a corporation is committed to its officers and directors, and if their actions are consistent with the exercise of honest discretion, the management of the corporation cannot be assumed by the court.

*Steven v. Hale-Haas Corp.*, 249 Wis. 205, 221, 23 N.W.2d 620 (1946).

¶57 In 1987, Wisconsin adopted statutory immunity protections for directors of corporations.[19] These statutory protections provide directors of corporations with a legal shield against monetary liability for breach of fiduciary duty claims. *See* Kenneth B. Davis, Jr., *The Business Judgment Rule in*

---

[19] Specifically, the legislature passed 1987 Wis. Act 13, which created WIS. STAT. § 180.307. This statute was the precursor to WIS. STAT. § 180.0828(1), the immunity statute at issue in *Data Key*.

*Wisconsin*, 2015 WIS. L. REV. 475, 484 (2015).  Only when certain exceptions apply, such as willful misconduct or a willful failure to deal fairly with the corporation on a matter concerning a material conflict of interest, is the director not entitled to immunity.

¶58    In *Data Key*, our supreme court addressed the relationship between Wisconsin's notice pleading standard and WIS. STAT. § 180.0828(1).[20]  The court began by holding that § 180.0828(1) codified Wisconsin's common law BJR.[21] *Data Key*, 356 Wis. 2d 665, ¶32.  The court then explained that monetary claims against a corporate director for breach of fiduciary duty must be analyzed through

---

[20]  WISCONSIN STAT. § 180.0828(1) provides:

> (1) Except as provided in sub. (2), a director is not liable to the corporation, its shareholders, or any person asserting rights on behalf of the corporation or its shareholders, for damages, settlements, fees, fines, penalties or other monetary liabilities arising from a breach of, or failure to perform, any duty resulting solely from his or her status as a director, unless the person asserting liability proves that the breach or failure to perform constitutes any of the following:
>
> (a) A willful failure to deal fairly with the corporation or its shareholders in connection with a matter in which the director has a material conflict of interest.
>
> (b) A violation of criminal law, unless the director had reasonable cause to believe that his or her conduct was lawful or no reasonable cause to believe that his or her conduct was unlawful.
>
> (c) A transaction from which the director derived an improper personal profit.
>
> (d) Willful misconduct.

[21]  Whether statutory immunity, rather than "codifying" the common law BJR, provides an *additional* layer of director protection is the topic of robust scholarly discussion.  *See* Kenneth B. Davis, Jr., *The Business Judgment Rule in Wisconsin*, 2015 WIS. L. REV. 475, 485-89 (2015).  To what extent the common law BJR continues to provide corporate protections beyond statutory immunity is not an issue raised by either party, and we will not address it here.

the lens of § 180.0828(1) because that statute "provides that a director *is not liable* unless the facts describing the director's actions" constitute one of the exceptions to that statute. *Id.*, ¶35 (internal quotation marks omitted). Accordingly, the court held that notice pleading requires plaintiffs to plead facts sufficient to avoid the statutory immunity provided in § 180.0828(1). *Id.*, ¶43. Hence, to state a claim against a corporate director for monetary liability arising from a breach of the director's fiduciary duty, a plaintiff must plead facts sufficient to plausibly show that the actions of the director fall under one or more of the exceptions to statutory immunity under § 180.0828(1). *Id.*, ¶¶36, 39.

¶59 Directors of nonstock corporations are immunized from monetary liability for a breach of fiduciary duty under WIS. STAT. § 181.0855(1). Because this statute is identical in all material respects to WIS. STAT. § 180.0828(1) (the statute analyzed in *Data Key*), we apply the rule announced in *Data Key* to our analysis of § 181.0855(1) in the present case. This statute provides, in relevant part:

> (1) IN GENERAL. … [A] director or officer is not liable to the corporation, its members or creditors, or any person asserting rights on behalf of the corporation, its members or creditors, or any other person, for damages, settlements, fees, fines, penalties or other monetary liabilities arising from a breach of, or failure to perform, any duty resulting solely from his or her status as a director or officer, unless the person asserting liability proves that the breach or failure to perform constitutes any of the following:
>
> (a) A willful failure to deal fairly with the corporation or its members in connection with a matter in which the director or officer has a material conflict of interest.
>
> ….
>
> (c) A transaction from which the director or officer derived an improper personal profit or benefit.

        (d) Willful misconduct.

Sec. 181.0855(1).[22]

¶60    Here, the complaint alleges that the defendant directors breached their fiduciary duties of care, loyalty, and good faith to Riversong "by engaging in business activities directly competing with Riversong and unreasonably obstructing Riversong's attempts to create a long-term care campus in Verona." The complaint alleges that the defendant directors are liable for this conduct pursuant to the three exceptions to the BJR set forth in WIS. STAT. § 181.0855(1)(a), (c), and (d). We first address the exception in § 181.0855(1)(a).

### 1. WISCONSIN STAT. § 181.0855(1)(a).

¶61    The first exception set forth under WIS. STAT. § 181.0855(1)(a) requires a "willful failure to deal fairly with the corporation or its members in connection with a matter in which the director or officer has a material conflict of interest." For the following reasons, we conclude that the complaint alleges sufficient facts to state a claim under this exception to statutory immunity.

¶62    First, the complaint alleges that the defendant directors had a "material conflict of interest" in certain "matter[s]." *See id.* The complaint identifies the pertinent "matter[s]" as the defendant directors "engaging in

---

[22] WISCONSIN STAT. § 181.0855(1)(b) addresses a violation of criminal law. There is no such contention here, so we do not address it in this opinion.

We also observe that WIS. STAT. § 181.0855(1), by its terms, does not apply to an action against the nonstock corporation itself or to a monetary or other action against a director or officer of a nonstock corporation that does not arise solely from a breach of his or her fiduciary duty. In those situations, Wisconsin's common law BJR may control. *See* Davis, *supra*, at 487-88.

business activities directly competing with Riversong and unreasonably obstructing Riversong's attempts to create a long-term care campus in Verona to the benefit of Attic Angel and the detriment of Riversong." With respect to the defendant directors' obstruction of Riversong's attempts to locate alternative sites, the complaint alleges that "representatives of Marquardt proposed numerous long-term care campus locations in Verona which were dismissed without significant explanation or discussion by representatives of Attic Angel serving on the Riversong Board."

¶63 The complaint also alleges that the defendant directors had a "material conflict of interest" in these matters when they were "making decisions between courses of action that benefit either Riversong or Attic Angel, but not both." Although the complaint does not elaborate on this alleged conflict of interest, it is reasonable to infer from the allegations in the complaint that the defendant directors' consideration of proposals for alternative sites for the Riversong facility involved a conflict between their loyalties to Riversong and their loyalties to Attic Angel. Specifically, when the defendant directors were asked to consider the proposals for alternative Riversong sites, they owed a duty of loyalty to act in Riversong's best interest in attempting to secure a new site for developing a Riversong long-term care facility. Yet at the same time they were considering these proposals, the complaint alleges that the defendant directors, as Attic Angel board members, also had loyalties to Attic Angel, which was allegedly working with Forward to develop a potentially competing long-term care facility in Verona. Indeed, if the defendant directors had approved a site for the Riversong facility, the MA's Area of Exclusivity provision could have inhibited Attic Angel from developing a different long-term care facility in Verona with Forward. As a result, the defendant directors allegedly had undisclosed divided loyalties on a

material issue, *i.e.*, Riversong's development of a long-term care facility in Verona. The complaint therefore alleges sufficient facts to plausibly show that the defendant directors had a "material conflict of interest" when considering and rejecting various proposals for alternative sites for a Riversong facility.[23]

¶64    The Defendants argue that the complaint does not sufficiently allege that the defendant directors had a "material conflict of interest" because their affiliation with Attic Angel was a "foundational premise of the joint venture." This argument mischaracterizes the complaint's allegations. As explained, the complaint alleges that the defendant directors' affiliation with Attic Angel created a conflict of interest only in situations where Attic Angel's interests were contrary to Riversong's interests, such as when the defendant directors were considering proposals for alternative sites for the Riversong facility while Attic Angel was allegedly working with a separate organization to develop a competing facility. The complaint does not allege that the defendant directors' representation of Attic Angel on the Riversong board of directors created the conflict, as they were specifically appointed as Attic Angel's "representatives" on the Riversong board. Rather, the complaint alleges that the conflict of interest arose when the defendant directors' loyalties to Attic Angel diverged from their loyalties to Riversong. *See Quadrant Structured Prods. Co. v. Vertin*, 102 A.3d 155, 186 (Del. Ch. 2014) ("If

---

[23] As noted, the complaint appears to allege that the defendant directors also had a conflict of interest when "engaging in business activities directly competing with Riversong." However, the complaint does not allege sufficient facts as to these competing business activities. For instance, the complaint does not include any allegations that any of the defendant directors were themselves engaging in competing business activities. *Cf. General Auto. Mfg. Co. v. Singer*, 19 Wis. 2d 528, 534, 120 N.W.2d 659 (1963) (holding that a company's general manager had a conflict of interest under common law fiduciary duty principles because he was engaged in a separate business in direct competition with the company). Therefore, we conclude that the complaint does not allege sufficient facts that the defendant directors' competing "business activities" involved a material conflict of interest under WIS. STAT. § 181.0855(1)(a).

the interests of the beneficiaries to whom the dual fiduciary owes duties are aligned, then there is no conflict of interest. But if the interests of the beneficiaries diverge, the fiduciary faces an inherent conflict of interest." (citation omitted)).

¶65    Second, the complaint alleges sufficient facts to plausibly show that the defendant directors' conduct was a "willful failure to deal fairly" with Riversong in connection with these matters. Our research reveals that there are no precedential decisions that have interpreted this requirement in WIS. STAT. § 181.0855(1)(a). Nonetheless, courts have interpreted this requirement in another immunity statute with nearly identical language concerning managers and members in an LLC. In *Gottsacker v. Monnier*, 2005 WI 69, ¶31, 281 Wis. 2d 361, 697 N.W.2d 436, our supreme court interpreted the phrase "willful failure to deal fairly" as meaning that individuals with a material conflict of interest "may not willfully act or fail to act in a manner that will have the effect of injuring the [corporation] or its other members."[24] The court explained that "[t]his inquiry contemplates both the conduct along with the end result, which we view as intertwined. The inquiry also contemplates a determination of the purpose of the [corporation] and the justified expectations of the parties." *Id.*

---

[24] The court in *Gottsacker* was interpreting the language of WIS. STAT. § 183.0402(1)(a) (2001-02). *See Gottsacker v. Monnier*, 2005 WI 69, ¶31, 281 Wis. 2d 361, 697 N.W.2d 436. This statute provided in relevant part:

> Duties of managers and members. Unless otherwise provided in an operating agreement:
>
> (1) No member or manager shall act or fail to act in a manner that constitutes any of the following:
>
> (a) A willful failure to deal fairly with the limited liability company or its members in connection with a matter in which the member or manager has a material conflict of interest.

Sec. 183.0402(1)(a) (2001-02).

¶66    Courts have also held that this requirement may be satisfied if an individual with a material conflict of interest misleads or is not honest with the corporation and its members.  For instance, in *Marx v. Morris*, 2019 WI 34, ¶56, 386 Wis. 2d 122, 925 N.W.2d 112, our supreme court held that there was a genuine issue of fact as to whether a member of an LLC willfully failed to deal fairly with the other members of the LLC because he engaged in self-serving conduct, unfairly influenced a vote of the LLC by failing to give proper notice, and intentionally misled the other members of the LLC.[25]  By contrast, in *Dixon v. ATI Ladish LLC*, 667 F.3d 891, 896 (7th Cir. 2012), the Seventh Circuit held that directors who had a material conflict of interest did not willfully fail to deal fairly with the shareholders because they disclosed their conflict of interest to the shareholders.[26]

¶67    In the present case, we conclude that the complaint alleges sufficient facts to plausibly show that the defendant directors willfully failed to deal fairly with Riversong by prioritizing their relationship with Attic Angel to the detriment of Riversong and failing to disclose their material conflict of interest.  The complaint alleges that the defendant directors obstructed Riversong's attempts to develop an alternate site for a long-term care facility after Riversong failed to acquire the initial site.  The complaint also alleges that the defendant directors did

---

[25] In *Marx*, the court interpreted WIS. STAT. § 180.0402(1) (2015-16), a later version of the statute that was addressed in *Gottsacker*.  *Marx v. Morris*, 2019 WI 34, ¶56, 386 Wis. 2d 122, 925 N.W.2d 112.  Like the version addressed in *Gottsacker*, the version of this statute addressed in *Marx* was, in all relevant respects, identical to WIS. STAT. § 181.0855(1)(a), the statute at issue here.

[26] This case, cited for persuasive value only, interpreted WIS. STAT. § 180.0828(1), the same statute that our supreme court addressed in *Data Key*.  *Dixon v. ATI Ladish LLC*, 667 F.3d 891, 896 (7th Cir. 2012).  As explained above, this statute is, in all relevant respects, identical to WIS. STAT. § 181.0855(1)(a), the statute at issue here.

not disclose Attic Angel's business relationship with Forward until after Mauthe learned of this relationship in May 2020.

¶68  The defendant directors' alleged conduct fits within the meaning of "willful failure to deal fairly" as set forth in *Gottsacker*.  First, the allegations in the complaint indicate that Riversong's purpose was for the development of a long-term care facility in Verona.  *See Gottsacker*, 281 Wis. 2d 361, ¶31.  Second, these allegations indicate that "the justified expectations" of Riversong and Marquardt were that Riversong's board of directors would continue to search for alternative sites for the development of a long-term care facility after the termination of the JVA, even though there was no contractual obligation to do so. *See id.*  Indeed, according to the allegations in the complaint, the defendant directors indicated their willingness to search for alternative sites by continuing to attend Riversong board meetings and considering proposals for alternative sites after the termination of the JVA.  Hence, the complaint plausibly alleges that Riversong had a justified expectation that the defendant directors would act in good faith in supporting Riversong's efforts to secure a site for the development of a long-term care facility.  Finally, Riversong alleges that, by dismissing proposals for alternative long-term care sites while at the same time pursuing an undisclosed business relationship with a third party to develop a potentially competing long-term care facility in Verona, the actions of the defendant directors had "the effect of injuring the [corporation]."  *See id.*  For instance, at the pleadings stage, it is reasonable to infer that the defendant directors' alleged conduct may have caused Riversong to lose a business opportunity and anticipated profits that it would have received had the defendant directors approved an alternative site for a Riversong facility.

¶69    The defendant directors' alleged conduct is also consistent with the interpretation of the phrase "willful failure to deal fairly" as set forth in *Marx* and *Dixon*.  As explained above, the complaint alleges that the defendant directors failed to disclose their conflict of interest when considering alternative sites for the Riversong facility.  It is reasonable to infer that, like the defendant in *Marx*, this alleged conduct misled Riversong and the other directors on the Riversong board of directors and "unfairly influenced" the outcomes of decisions regarding the alternative sites.  *See Marx*, 386 Wis. 2d 122, ¶56.  And, unlike the directors in *Dixon*, the defendant directors here did not independently and immediately disclose their alleged conflict of interest.  Instead, according to the complaint, they considered and rejected alternative sites for the Riversong facility for almost two years and only disclosed their alleged conflict of interest at the May 2020 board meeting after a third party alerted Mauthe that Attic Angel had bid on a Verona development project with another entity, Forward.

¶70    Finally, it is reasonable to infer that the defendant directors' unfair conduct was "willful" because they allegedly knew of, or at least were made aware of, the conflict of interest that could arise between their obligations to Riversong and their relationship with Attic Angel.  *See Hannigan v. Sundby Pharmacy, Inc.*, 224 Wis. 2d 910, 920, 593 N.W.2d 52 (Ct. App. 1999) (holding that the meaning of the term "willfully" is ordinarily interchangeable with the term "knowingly").  As explained above, the complaint alleges that Mauthe advised Drescher in December 2018 that working with a separate entity to develop and manage a senior living community in Verona could violate Attic Angel's contractual and fiduciary obligations.  Hence, Drescher was allegedly aware of a potential conflict between her duties to Riversong and her duties to Attic Angel.  Indeed, the complaint alleges that all of the defendant directors were on Attic

34

Angel's board of directors. Based on these allegations, it is reasonable to infer not only that Drescher was aware of a potential conflict of interest, but also that the other defendant directors would have been aware of that potential conflict. *See Steven*, 249 Wis. at 221 ("The business of a corporation is committed to its officers and directors."). This inferred knowledge on the part of the defendant directors further supports our conclusion that the complaint plausibly alleges that the defendant directors' failure to deal fairly with Riversong was "willful."

¶71　In sum, when accepting as true all facts well-pled in the complaint and all reasonable inferences therefrom, we conclude that the complaint alleges sufficient facts to plausibly show that the defendant directors breached their fiduciary duty pursuant to the exception to the BJR set forth in WIS. STAT. § 181.0855(1)(a).

### 2. WISCONSIN STAT. § 181.0855(1)(c) and (d).

¶72　The complaint also alleges that the defendant directors breached their fiduciary duties pursuant to the exceptions set forth under WIS. STAT. § 181.0855(1)(c) and (d). On appeal, Riversong only addresses these two exceptions in a conclusory manner and does not develop any arguments that the complaint states a claim under either of these exceptions. Even after the Defendants asserted in their response brief that Riversong's arguments regarding these exceptions were undeveloped, Riversong made no attempt in its reply brief to develop these arguments. We will not develop these arguments on Riversong's behalf. *See State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) (holding that this court may decline to address undeveloped arguments because we "cannot serve as both advocate and judge"); *see also A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998) ("[A] party has

to adequately, and with some prominence, argue an issue in order for this court to decide it. It is insufficient to just state an issue on appeal without providing support for the position and providing legal authority supporting the position."). Therefore, we conclude that Riversong has failed to establish that the complaint states claims under § 181.0855(1)(c) and (d).

## C. Injury.

¶73 Finally, the complaint alleges that the defendant directors' breach of their fiduciary duty—*i.e.*, their willful failure to deal fairly with Riversong under WIS. STAT. § 181.0855(1)(a)—caused injury to Riversong. *See **Gottsacker***, 281 Wis. 2d 361, ¶31 (holding that willfully unfair conduct is that which results in injury to the corporation); ***Berner Cheese***, 312 Wis. 2d 251, ¶40 (holding that a breach of fiduciary duty claim requires that the breach of duty caused injury to the plaintiff). Specifically, the complaint alleges that this unfair dealing was "to the … detriment of Riversong" and caused at least $75,000 in damages. Although the complaint does not specify how Riversong suffered these damages, it is reasonable to infer that the defendant directors' conduct caused Riversong to lose profits that it anticipated receiving had the defendant directors approved an alternative site for the Riversong facility, enabling it to develop a long-term care campus and generate revenue.

¶74 In sum, we conclude that the complaint states a claim for breach of fiduciary duty only with respect to the exception under WIS. STAT. § 181.0855(1)(a).

## V. Usurpation of Corporate Opportunity.

¶75     Under the "doctrine of corporate or business opportunity," a person "who occupies a fiduciary relationship to a corporation may not acquire, in opposition to the corporation, property in which the corporation has an interest or tangible expectancy or which is essential to its existence." *Racine v. Weisflog*, 165 Wis. 2d 184, 190-91, 477 N.W.2d 326 (Ct. App. 1991).   In determining whether a director has usurped a corporate opportunity, Wisconsin courts apply a two-prong test. *Id.* at 193.   First, the court must determine "whether a corporate opportunity in fact exists." *Id.* at 193-94.   Second, the court must determine whether the seizure of the opportunity by the director was a breach of fiduciary duties to the corporation. *Id.* at 195-96.   Under the second prong, the court determines whether any equitable factors exist that show that the director acted in conformity with their fiduciary duties when they seized the opportunity. *Id.*; *see also Community Nat'l Bank v. Medical Ben. Adm'rs, LLC*, 2001 WI App 98, ¶10, 242 Wis. 2d 626, 626 N.W.2d 340.

¶76     In the present case, the complaint identifies the pertinent "corporate opportunity" as "the opportunity to invest in and manage the long-term care project initiated by Forward."   The complaint alleges that the board members usurped this opportunity "[b]y failing to disclose" this opportunity.   We conclude that the complaint fails to state a claim because there are no factual allegations that the defendant directors personally acquired property or otherwise took the corporate opportunity for themselves. *See Racine*, 165 Wis. 2d at 191 ("[A] director cannot be allowed to profit *personally* by acquiring property that he [or she] knows the corporation will need or intends to acquire." (emphasis added)); *see also Bump Pump Co. v. Waukesha Foundry Co.*, 238 Wis. 643, 653, 300 N.W. 500 (1941) (rejecting application of the corporate opportunity doctrine

where the director did not "divert[] any business to [him]self that properly belonged to the corporation"). Rather, the complaint merely alleges that the defendant directors failed to disclose the investment opportunity. This allegation alone is not enough to satisfy the corporate opportunity doctrine.

¶77    On appeal, Riversong argues that the complaint stated a claim because "it is plausible, if not likely, that discovery will show that Attic Angel and the Board members acting on its behalf secured identifiable personal gains as a result of Attic Angel's conduct in forming a relationship with Forward." According to Riversong, it could not provide the specific details of the alleged corporate opportunity in the complaint because the defendant directors and Attic Angel intentionally kept that information secret. This argument fails because a motion for failure to state a claim requires the plaintiff to plead factual allegations in the complaint that, if true, demonstrate that the plaintiff is entitled to relief. *See Cattau*, 386 Wis. 2d 515, ¶6. Because the complaint does not include any factual allegations that the defendant directors personally acquired a corporate opportunity, Riversong fails to state a claim for usurpation of corporate opportunity.[27]

---

[27] We note that the doctrine of corporate opportunity is a facet of the fiduciary duties of loyalty and good faith. *Racine v. Weisflog*, 165 Wis. 2d 184, 190-91, 477 N.W.2d 326 (Ct. App. 1991). As explained earlier, our supreme court has held that a complaint states a claim against a corporate director for monetary liability arising from their breach of a fiduciary duty only if it pleads sufficient facts to show that the director's acts fall within one of the four exceptions set forth in WIS. STAT. § 181.0855(1) (or any of the analogous statutes governing other types of corporations). *Data Key*, 356 Wis. 2d 665, ¶36. Based on this holding in *Data Key*, we question whether the cause of action for usurpation of corporate opportunity must meet the pleading requirements of § 181.0855 or other analogous immunity statutes. Our research reveals that no Wisconsin court has addressed this issue. Nonetheless, we need not resolve this question because Riversong's corporate opportunity claim fails on other grounds.

## CONCLUSION

¶78    For the foregoing reasons, the order of the circuit court is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with this opinion.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded for further proceedings.

Not recommended for publication in the official reports.